Caledonian-Record Publishing Co. v. A. James Walton, Commissioner, Vt. Department of Public Safety and Town of St. Johnsbury

[573 A.2d 296]

No. 88-293

Present: Allen, C.J., Peck,[1] Gibson, Dooley and Morse, JJ.

Opinion Filed March 2, 1990

---

[1] Justice Peck was present for oral argument but did not participate in the decision.

*James C. Gallagher* and *Andre D. Bouffard* of *Downs Rachlin & Martin,* Burlington, for Plaintiff-Appellee.

*James R. Crucitti* and *Neil Nulty*, Law Clerk (On the Brief), Waterbury, for Defendants-Appellants Walton and Department of Public Safety.

*Zuccaro Willis and Bent*, St. Johnsbury, for Defendant-Appellant Town of St. Johnsbury.

*John H. Fitzhugh* of *Sheehey Brue Gray & Furlong*, Burlington, for amicus curiae Mt. Mansfield Television.

**Dooley, J.** The parties appeal the order of the superior court which requires defendants to disclose to plaintiff the names of persons cited or arrested by defendants and the charges against these persons, unless there is an ongoing investigation. Defendants appeal the portion of the order which requires them to disclose the names of persons who have been issued a citation while plaintiff appeals the portion of the order which permits nondisclosure of the names when there is an ongoing investigation. We find that pursuant to Vermont's Access to Public Records Act, 1 V.S.A. §§ 315–320 (Act), citation records are public records and affirm the order after striking the exception for ongoing investigations.

The parties stipulated to the following facts. On April 2, 1988, the Vermont State Police, an agency of the Vermont Department of Public Safety, and the St. Johnsbury Police (SJPD) searched a residence in the Town of St. Johnsbury and seized nine marijuana plants and other evidence of marijuana cultivation. The occupant of the residence was taken into involuntary custody and brought to the State Police barracks in St. Johnsbury, where he was processed on the charge of cultivation of marijuana. The individual was then released upon a citation, pursuant to V.R.Cr.P. 3, which ordered him to appear in court on May 16, 1988. The State Police issued a press release concerning this incident, but declined to release the individual's name or address. Both the State Police and the SJPD refused to disclose the name of the individual cited.[2]

---

[2] In addition, the parties stipulated that the SJPD, during the week of March 1, 1988: (1) issued a citation for a misdemeanor to at least one person and for

Prior to the fall of 1987, the SJPD routinely disclosed the names of persons arrested or cited for alleged violations of the criminal laws. In the fall of 1987, however, the SJPD revised its policy and presently only discloses the names of persons arrested and retained in custody, but not the names of persons who are given citations and then released under V.R.Cr.P. 3(c).

The parties raise two issues on appeal. The first issue is whether the Access to Public Records Act, 1 V.S.A. §§ 315–320, permits public access to citations.[3] The second issue presented is whether the Vermont and Federal Constitutions mandate public access to citations. Because we find that citation records must be disclosed under the Access to Public Records statutes, we do not address the constitutional issue.

Vermont's Access to Public Records statutes begins with a broad policy statement which states in part:

> It is the policy of this subchapter to provide for free and open examination of records consistent with Chapter I, Article 6 of the Vermont Constitution.[4] Officers of government are trustees and servants of the people and it is in the public interest to enable any person to review and criticize their decisions even though such examination may cause inconvenience or embarrassment. All people, however, have a right to privacy in their personal and economic pursuits, which ought to be protected unless specific information is needed to review the action of a governmental officer. Consistent with these principles, the general assembly hereby

---

a felony to at least one person without taking either into custody; and (2) issued a citation for a misdemeanor to at least one person and for a felony to at least one person after taking each into custody.

[3] The parties stipulated that plaintiff had exhausted all administrative remedies under 1 V.S.A. §§ 315–319 in an effort to obtain the information. Thus, defendants have not challenged plaintiff's entitlement to an injunction if citations are subject to disclosure under the Access to Public Records Act.

[4] Chapter I, Article 6 of the Vermont Constitution states:

> That all power being originally inherent in and consequently derived from the people, therefore, all officers of government, whether legislative or executive, are their trustees and servants; and at all times, in a legal way, accountable to them.

declares that certain public records shall be made available to any person as hereinafter provided.

1 V.S.A. § 315. Consistent with this broad policy statement, the Act provides that, subject only to administrative guidelines, "Any person may inspect or copy any public record or document of a public agency." 1 V.S.A. § 316. The Act also provides a sweeping definition of public record or document which is limited only by specific enumerated exceptions. The statutory definition of public record along with the exception relevant to this case is as follows:

> "public record" or "public document" means all papers, staff reports, individual salaries, salary schedules or any other written or recorded matters produced or acquired in the course of agency business except: . . . (5) records dealing with the detection and investigation of crime, including those maintained on any individual or compiled in the course of a criminal or disciplinary investigation by any police or professional licensing agency; provided, however, records relating to management and direction of a law enforcement agency and records reflecting the initial arrest of a person and the charge shall be public.

1 V.S.A. § 317(b)(5).[5]

Defendants contend that the citations involved in this case are "records dealing with the detection and investigation of crime" within the meaning of § 317(b)(5) and are not "records reflecting initial arrest of a person." Plaintiff contends that citations are not records dealing with the detection and investigation of crime but, if they are, they are "records reflecting initial arrest of a person" and thus are public under the last clause of § 317(b)(5).

A citation is a direction to appear before a judicial officer at a specified place and time in order to answer a charge which is stated on the citation. See V.R.Cr.P. Form 8. It is signed by the issuing law enforcement officer. See V.R.Cr.P. 3(c)(5). Under V.R.Cr.P. 3(c), citations are issued in criminal cases as an alter-

---

[5] In all, nineteen exceptions to the public record definition are listed.

native to arrest in a number of instances. In some cases, the officer must issue a citation. See V.R.Cr.P. 3(c)(1) (most misdemeanors). In others, the officer has the choice to arrest the person or issue a citation. See V.R.Cr.P. 3(c)(2), (3). In any case, an officer may "stop and briefly detain" a person in order to determine whether an arrest is appropriate and to issue a citation. V.R.Cr.P. 3(c)(1). However, if no arrest is made, such a stop and detention "shall not be deemed an arrest for any purpose." *Id.*

As indicated above, the statutory question before us has two parts: (1) whether a citation is a record dealing with the detection and investigation of crime; and (2) if so, whether it is an arrest record. At least initially, we find it helpful to analyze the first question in isolation from the second and to consider them in an issue not directly before us—that is, whether an arrest record is a record dealing with the detection and investigation of crime. That issue is, of course, entirely theoretical because arrest records are clearly excluded by the separate proviso. In evaluating the precedent from other jurisdictions, which lack our unique citation procedure or a separate proviso making arrest records public, we find that the theoretical question is very instructive in resolving this appeal.

██ We start with the statement of legislative intent in the Act: "the provisions of this subchapter shall be liberally construed with the view towards carrying out the [stated] declaration of public policy." 1 V.S.A. § 315. Additionally, we note that the public interest clearly favors the right of access to public documents and public records. See, e.g., *Newspapers, Inc. v. Breier*, 89 Wis. 2d 417, 426, 279 N.W.2d 179, 184 (1979). Thus, the common law protects "the right in all citizens to inspect the public records and documents made and preserved by their government when not detrimental to the public interest." *Matte v. City of Winooski*, 129 Vt. 61, 63, 271 A.2d 830, 831 (1970). Consistent with these policies, the exceptions listed in § 317(b) should be construed strictly against the custodians of the records and any doubts should be resolved in favor of disclosure. See, e.g., *State v. Lancaster Police Dep't*, 38 Ohio St. 3d 324, 328, 528 N.E.2d 175, 178 (1988).

■ Although we base our decision in this case upon statutory rather than constitutional grounds, we are operating in the shadow of the First Amendment. Pursuant to the First Amendment, it is generally recognized that the public and the media have a constitutional right of access to information relating to the activities of law enforcement officers and to information concerning crime in the community. See, e.g., *Houston Chronicle Publishing Co. v. City of Houston*, 531 S.W.2d 177, 186 (Tex. Ct. App. 1975). This right of access, however, is not unlimited. In order to determine the reach of this constitutional right, it is necessary to balance a number of competing interests.

The interest in disclosure is fairly summarized in a recent United States Supreme Court decision as follows: "The generation that made the nation thought secrecy in government one of the instruments of Old World tyranny and committed itself to the principle that a democracy cannot function unless the people are permitted to know *what their government is up to.*" *United States Department of Justice v. Reporters Committee for Freedom of the Press*, 489 U.S. 749, 772–73, 109 S. Ct. 1468, 1481 (1989) (emphasis in original) (citations omitted). This interest is particularly acute in the area of law enforcement. On the other hand, the state has significant interests in protecting the public from criminal activity, prosecuting those who commit crimes, and protecting the privacy rights of individual citizens. These interests may, at times, override the interest in public disclosure. The Public Access statute was intended to mirror the constitutional right of access, and as such, the exceptions enumerated in the statute allow a balancing of the competing interests.

In analyzing whether citations are records dealing with the investigation and detection of crime, in light of the policies behind the Public Access statute, we are aided by decisions from other states dealing with arrest records. While, as we discuss below, there are some differences between arrest records and citations, we conclude that the policy for arrest records and citations should be and is the same under § 317(b)(5). Accordingly, these decisions from other states are helpful on the question before us.

Nearly every state has some form of public records law similar to our Public Access statute. See generally Braverman & Heppler, *A Practical Review of State Open Records Laws*, 49 Geo. Wash. L. Rev. 720 (1981). A number of states have a statute similar to Vermont's in that public records are given a very broad definition but the statute enumerates specific, narrowly constructed exceptions, including an exception for records dealing with the detection and investigation of crime. See *id.* at 739–41. In several of these states, the courts have addressed whether arrest records are public records or are exempted because they involve the detection and investigation of crime. While most of these cases do not cover our unique citation procedure, they are instructive. The general consensus in these cases is that an arrest is the result of the detection and investigation of crime, but is not part of such detection and investigation. Therefore, the courts have found arrest records to be public records and not included in the crime detection and investigation exception.

In Ohio, for example, the public records law defines public records as "any record that is kept by any public office." Ohio Rev. Code Ann. § 149.43(A)(1) (Anderson 1988). Included among the several exceptions to the public records are confidential law enforcement investigatory records. *Id.* The Supreme Court of Ohio, however, has concluded that arrest and citation records are not confidential law enforcement investigatory records and must be disclosed pursuant to state statute. *State v. Lancaster Police Dep't*, 38 Ohio St. 3d at 328–29, 528 N.E.2d at 178–79.

In Texas, the Houston police department maintained a number of records relating to police and criminal activities. When a newspaper sought access to these records, the police department refused to disclose them, relying on the Texas Public Records Act. The Act defines public records as "[a]ll information collected, assembled, or maintained by or for governmental bodies . . . pursuant to law or ordinance or in connection with the transaction of official business." Tex. Rev. Civ. Stat. Ann. art. 6252-17a § 3(a) (Vernon 1990). Like Vermont, however, there are several exceptions to this broad definition, including

"records of law enforcement agencies and prosecutors that deal with the detection, investigation, and prosecution of crime." *Id.* § 3(a)(8). The Texas Court of Civil Appeals construed the exception very narrowly and determined that it includes only such records as "officers' speculations of a suspect's guilt, officers' views as to the credibility of witnesses, statements by informants, ballistics reports, fingerprint comparisons, or blood and other laboratory tests." *Houston Chronicle Publishing Co. v. City of Houston,* 531 S.W.2d at 187. The court reasoned that disclosure of this type of information may endanger the state's position in criminal prosecutions since the material may be used to the disadvantage of the prosecution and that disclosure may reveal the names of informants and threaten to intimidate potential witnesses. *Id.* The court concluded, however, that arrest records were an entirely different matter and therefore must be disclosed in the public interest. *Id.* at 188.

We concur with the holdings of the Ohio and Texas courts that arrest records are not records dealing with the investigation and detection of crime, but rather are the product of such an investigation. This conclusion is the most consistent with the legislative intent and the meaning of the words used, two primary considerations in statutory construction in this state. See, e.g., *In re Spencer,* 152 Vt. 330, 336, 566 A.2d 959, 962–63 (1989).

This conclusion also appears to be consistent with the common law of Vermont. Where a statute operates in an area formerly governed by the common law, we will find a change in the law only if the statute "'overturns the common law in clear and unambiguous language, or if the statute is clearly inconsistent with the common law.'" State v. Francis, 151 Vt. 296, 306, 561 A.2d 392, 398 (1989) (quoting *Langle v. Kurkul,* 146 Vt. 513, 516, 510 A.2d 1301, 1303 (1986)).

As indicated above, under our decision in *Matte v. City of Winooski,* 129 Vt. at 63, 271 A.2d at 831, we have recognized a broad common law right of access to public records "when not detrimental to the public interest." While we have never had occasion to interpret the right of access in a case dealing with arrest records, we are persuaded that we would find such a

right of access. The most significant precedent in this area is *Newspapers, Inc. v. Breier*, 89 Wis. 2d 417, 279 N.W.2d 179 (1979), in which the Wisconsin Supreme Court found a right of access to certain arrest records under a statute which the court interpreted as implementing the common law. *Id.* at 426, 279 N.W.2d at 183 ("We have interpreted the statute as a statement of the common law, leaving in place the limitations on the inspection of records that existed at common law."). The situation in *Breier* was somewhat different than here because the police would release the name of the arrested person but would not release the charge. We think, however, the principle of *Breier* governs.

The *Breier* court balanced the competing interests, including the privacy interest of the person arrested, and held that the common law required disclosure of the arrest records. The court found:

> Information concerning the operations of the police department in making arrests and the charges upon which arrests are made is vital to the democratic system; and presumptively, by statute, the records are to be open. While in some cases involving police functions there is an overriding public interest in preserving secrecy (*e.g.*, in the investigation of pending or proposed criminal charges), no overriding public-interest concern is discernible when the executive act of arrest has been completed. An arrest is the exercise of the government's power to deprive an individual of freedom.

*Id.* at 438, 279 N.W.2d at 189. In reaching its conclusion, the court used a "harm to the public interest" test that appears to be substantially identical to that which this Court used in *Matte*. See *id.* at 440, 279 N.W.2d at 190.

■ *Breier* is persuasive authority for the proposition that the disclosure of arrest records does not involve such a detriment to the public interest so as to overweigh the strong public policy behind public access to government records. Thus, the common law gives the right of access to arrest records, and we will interpret the statute consistent with that common law policy.

There is one main reason to conclude that arrest records do deal with investigation and detection of crime. That reason is that the Legislature has made a specific reference to arrest records included as a proviso to § 317(b)(5). Normally, the "exception of a particular thing from the operation of a statute indicates that in the enacting legislature's opinion, the excepted matter would have been within the purview of the general provision, absent the exception." *River Bend Farms, Inc. v. M & P Mo. River Levee Dist.*, 324 N.W.2d 460, 462 (Iowa 1982). Under this general rule, the specific proviso that records "reflecting initial arrest of a person" are public is an indication that the Legislature thought the proviso was necessary because they fell within the "detection and investigation of crime" exception to disclosure.

■ Statutory construction rules are aids to interpretation; they are "not laws, hard and inflexible, which *must* be applied in a given situation simply because it is possible to do so." *State v. Baldwin*, 140 Vt. 501, 511, 438 A.2d 1135, 1140 (1981). While the statement of the effect of a proviso set forth above is generally accurate, a proviso can also be "added to a statute . . . [to] exclude[] some possible ground of misinterpretation of its extent." H. Black, Handbook on the Construction and Interpretation of the Laws § 126, at 427 (2d ed. 1911). In such a case, the proviso may or may not fall within the purview of the general provision; the purpose of the proviso is to say clearly that the matter covered in the proviso is to be treated differently from the general provision.

A reading of the proviso for arrest records that places such records within the general category of records dealing with the detection and investigation of crime may comport best with the structure of the drafting, but we believe that it cannot stand against the clear expression of the intent of the Legislature, the common law background and the meaning of the terms used as shown by the decisions from other states. See *Lubinsky v. Fair Haven Zoning Bd.*, 148 Vt. 47, 49, 527 A.2d 227, 228 (1986) (letter of statute and its "literal sense" must yield where it conflicts with legislative purpose). We adopt, therefore, the alternative interpretation that the proviso was added to make clear that the

Legislature wanted arrest records to be disclosed whether or not they fit within the general exception for records dealing with the detection and investigation of crime. Thus, we find that arrest records are not records dealing with the detection and investigation of crime but instead are the products of crime detection.

Having held that an arrest record is subject to disclosure, we must next consider whether the same rule applies to a citation. Defendants make a number of policy arguments for differentiating between an arrest and a citation. We can categorize the arguments as two: (1) public disclosure of arrest records is necessary to prevent secret arrests or arrests without cause, but there is no similar concern for citations; and (2) the risk of violation of individual privacy rights is greater for a citation. We find neither policy argument persuasive.

Both an arrest and the issuance of a citation involve a finding by a law enforcement officer that there is probable cause to believe a person has committed a crime and both involve the commencement of a criminal proceeding based on that finding. In many instances under Criminal Rule 3, law enforcement has discretion in choosing whether to use the extreme power of arrest or, alternatively, to summon the alleged offender into court without an intervening restraint on liberty. In a modern criminal justice system, it is important that the use of this discretion be exposed to public view, if only to demonstrate that the discretion is exercised in a responsible and nondiscriminatory way. A partial disclosure of the results of this discretion, only when it results in an arrest, does not respond to the legitimate public interest.

Nor do we see how the potential invasion of privacy is greater in the case of a citation than in case of an arrest. In both cases, the action of the law enforcement officer must be based on probable cause and in both cases the prosecuting officer may decide not to take the next step by filing an information. Implicit in defendants' argument is the suggestion that the prosecutor is less likely to go forward in case of a citation than in the case of an arrest. If this suggestion is accurate, it is itself a matter of public concern that citizens are being summoned into court

where there is no probable cause to prosecute. We do not see how individual privacy concerns should produce a different policy in the case of an arrest from that in the case of a citation.

Even if defendants were correct in their policy arguments, we do not see how the statute allows us to conclude that citations do deal with the detection and investigation of crime while arrest records do not. A citation is very similar to an arrest. Like an arrest, it is the product of a police investigation—that is, it is the result of an investigation and not a record of it. Like an arrest, a citation must be based upon probable cause to believe that the person has committed a crime. See V.R.Cr.P. 3. A citation does not contain any information concerning the investigation that led to it, such as the names of witnesses or suspects. It is a simple legal instrument used to bring the accused before the court.

█ Because a citation is a summons to appear in court at a specified time to answer to a charge, it crosses the line between a police investigation and the judicial process. One who has been arrested or issued a citation in lieu of arrest is more than just a suspect under investigation, at least for the purposes of the public access statutes. *Lancaster Police Dep't*, 38 Ohio St. 2d at 328, 528 N.E.2d at 178–79. It is also noteworthy that, for the purposes of determining whether the statute of limitations has run, a prosecution for a felony or a misdemeanor is deemed commenced when a law enforcement officer issues a citation for a person to appear in court. 13 V.S.A. § 4508(2). For these reasons, we hold that citations, like arrest records, are public records which must be disclosed and are not included within the detection and investigation exemption. Because of this holding, we do not reach the second part of the question posed—whether citations would fit within the proviso in § 317(b)(5) for "records reflecting the initial arrest of a person."

█ In its cross-appeal, plaintiff challenges the limitation the trial court placed on its disclosure order which reads: "Disclosure of the name of a person cited shall not be required when

there is an ongoing investigation."[6] Although it is not totally clear, we take the language to refer to the investigation of another crime by the person cited or the investigation of a crime by another person. As stated above, the citation is not a record dealing with the investigation of the crime for which the person is cited; instead, it is the product of such an investigation. We fail to see how it can be categorized as a record dealing with the investigation of some other crime. Further, we note that the proviso clearly requiring the disclosure of arrest records contains no exception for ongoing investigations. Accordingly, we hold that defendants may not refuse to disclose the names of persons cited because there is an ongoing investigation.

*The order of the Caledonia Superior Court is amended to read:*

*The Vermont Department of Public Safety and the Town of St. Johnsbury are enjoined from withholding from the public, or from the news media, the names of persons cited or arrested or from withholding the name(s) of the offense(s) charged against such persons.*

*As amended, the order is affirmed.*

---

[6] This exclusion is implemented by a third sentence which allows defendants to refuse to disclose names where there is an ongoing investigation subject to plaintiff's right to seek "judicial review of this non-disclosure." Since we strike the exclusion, we do not decide whether this implementation sentence is valid.