Franco v. Tremblay, No. 740-10-10 Wncv (Crawford, J., Oct. 27, 2010)

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

VERMONT SUPERIOR COURT
WASHINGTON UNIT
CIVIL DIVISION

JOHN L. FRANCO

v.                                             DOCKET NO.: 740-10-10 Wncv

THOMAS TREMBLAY

DECISION ON PUBLIC RECORDS REQUEST

This is an application for an injunction ordering the Department of Public Safety to release the videotape of the roadside stop and arrest of Thomas Salmon for driving under the influence. The parties agree that the facts are not in dispute and that a final judgment is appropriate at this time.

In addition to the statutory request for public records pursuant to 1 V.S.A. § 319, the plaintiff has made constitutional claims that the Department of Public Safety has responded inconsistently to public records requests for videos of recent traffic stops involving politically prominent people. This claim is pending in a separate case in the U.S. District Court for the District of Vermont. At the hearing this morning, both sides stated that this claim is not made in this case and is not before the Civil Division.

FACTS

On November 13, 2009, a Vermont State trooper stopped, investigated, and arrested Mr. Salmon on suspicion of DUI. The events at roadside were captured on the cruiser video. Mr. Salmon was charged with DUI and pled guilty.

The plaintiff requested that the court view the video *in camera*. The court declines to do so. For purposes of this decision, the court accepts the parties' representation that the cruiser video shows the roadside stop, investigation and arrest of Mr. Salmon.

ANALYSIS

Public disclosure of law enforcement records of the type at issue here is governed by 1 V.S.A. § 317( c) which provides:

> The following public records are exempt from public inspection and copying:
> ***
> (5) records dealing with the detection and investigation of crime, including those maintained on any individual or compiled in the course of a criminal or disciplinary investigation by any police or professional licensing agency; provided, however, records relating to management and direction of a law

enforcement agency and records reflecting the initial arrest of a person and the charge shall be public.

Subsection 5 creates an exception for disclosure of records of criminal investigations. It also provides an exception from the exception for records "reflecting the initial arrest of a person." The parties agree that that the DUI video forms part of the record of a criminal investigation. They disagree about the scope of the exception for arrest records.

The plaintiff argues that the video is a record, that it "reflects" or depicts Mr. Salmon's initial arrest, and that consequently it fits within the arrest record exception.

The state argues for a definition of arrest record which is limited to the "Arrest Custody Report" maintained by the state police whenever a person is arrested. Although this report is not what the plaintiff is seeking, the state has no objection to providing it in this or any other case.

The legal arguments raised by both sides include reference to the purpose and importance of the Access to Public Records statute, to the historical scope of disclosure under common law, to the interpretation of the APR by the Vermont Supreme Court, and to rules of construction.

I.     Purpose of the Access to Public Records law

In enacting the APR, the legislature included a statement of purpose:

> It is the policy of this subchapter to provide for free and open examination of records consistent with Chapter I, Article 6 of the Vermont Constitution. Officers of government are trustees and servants of the people and it is in the public interest to enable any person to review and criticize their decisions even though such examination may cause inconvenience or embarrassment. All people, however, have a right to privacy in their personal and economic pursuits, which ought to be protected unless specific information is needed to review the action of a governmental officer.

1 V.S.A. § 315. Unless specifically exempt from disclosure, all governmental records are subject to review. 1 V.S.A. § 316. The following provision, 1 V.S.A. § 317 provides a balance between the goals of comprehensive examination of governmental conduct and the protection of individual privacy through the adoption of 39 exceptions to the general rule of disclosure.

In interpreting and enforcing the legislative directive of "free and open examination of records," the Vermont Supreme Court has adopted several principles favoring disclosure:

1. "… [O]pen access to governmental records is a fundamental precept of our society." *Shlansky v. City of Burlington*, 2010 Vt. 90 (October 1, 2010);

2

2. Exceptions to the general policy of disclosure must be construed strictly against the agencies holding the records and any doubt must be resolved in favor of disclosure. *Wesco, Inc. v. Sorrell*, 177 Vt. 287 (2004);

3. An agency resisting disclosure has the burden of showing that the record falls within a statutory exception. *Springfield Terminal Railway Co. v. Agency of Transportation*, 174 Vt. 341 (2002).

The Vermont Supreme Court considered these principles in connection with subsection 317( c)(5) in *Caledonian-Record Publishing Co. v. Walton*, 154 Vt. 15 (1990) in which citations to appear in court were held to be subject to disclosure. In reviewing the purpose of the APR Act, the Court wrote:

> This interest [in disclosure] is particularly acute in the area of law enforcement. On the other hand, the state has significant interests in protecting the public from criminal activity, prosecuting those who commit crimes, and protecting the privacy rights of individual citizens. These interests may, at times, override the interest in public disclosure. The Public Access statute was intended to mirror the constitutional right of access, and as such, the exceptions enumerated in the statute allow a balancing of the competing interests.

Id. at 21. The principles and ideals expressed in these decisions provide general guidance to the lower courts in APR cases, especially with respect to the strong expectation of disclosure under most circumstances and in close cases.

II.    Disclosure under common law

In construing subsection 317( c)(5), the *Caledonian-Record* decision follows the rule of construction that when the legislature enacts a statute in an area previously governed by common law, the courts will interpret the statute consistent with the prior common law except when a change in the law is clearly expressed. Id. at 23.

Although the arrival of in-dash video recorders follows the adoption of the Access to Public Records law in Vermont and other states, photography at the time of arrest is not a new process. Photographs taken at the time of arrest have generally been held to be *not* subject to any common law right of privacy and subject to disclosure. See *Detroit Free Press v. Oakland County,* 164 Mich. App. 656, 418 N.W.2d 124 (1987)(construing Michigan version of the APR). The analogy between the DUI video (which includes conduct prior to arrest) and the mug shot taken after arrest is imperfect, but it suggests that materials available to the public at common law were not strictly limited to the paper arrest record.

Another way of considering the issue of disclosure under common law is to consider the incident itself. A roadside stop and initial DUI investigation with field sobriety exercises is an inherently public event. It occurs out-of-doors on the public highway. The driver suspected of DUI receives an exit order and is questioned beside his car. The field

sobriety exercises occur on the shoulder of the road.  The operator is arrested in public before he is placed in the police car.  A bystander or a news team could watch the entire process.  Since the arrival of the DUI laws at the beginning of the last century, their enforcement has obviously occurred in public.  There is no reason to believe that at common law, either law enforcement or the persons charged with the offense had any expectation that the events following the stop would be in any sense private.

For these reasons, the court concludes that disclosure of a video recording is consistent with the common law prior to enactment of the APR.  The wide use of police recording equipment makes disclosure more painful and embarrassing to the person charged with the offense, but it does not alter the fundamentally public nature of the stop, roadside investigation, and arrest.

### III.    Prior cases under the APR

The scope of the "arrest record" exception to subsection 317( c) has not been defined by case law.  In the *Caledonian-Record* case, the court held that a citation to appear in court at a future date was the result of a criminal investigation but was not itself a record of an investigation.  The court did not reach the question of whether a citation fell within the arrest record exception.  There really is no case which provides direction concerning what is and what is not an arrest record.  The guidance which is available is more general and leans consistently towards the release of records unless they fall squarely within a narrowly construed exception.

### IV.    Plain meaning of the statutory language

If this court takes seriously the instructions in the appellate decisions to interpret any exception from the APR act narrowly and in favor of disclosure, it must follow the logic of the plaintiff's argument to its inevitable conclusion.

First, unlike the citation considered in *Caledonian-Record*, the DUI video is a record dealing with the investigation of a crime.  It fits within the general exception language of subsection 317( c)(5).  A video recording of a DUI arrest is a record.  It reflects an initial arrest in the sense that it shows the arrest.   On its face, the language of the exception to the exception supports disclosure.   The remaining issue is whether it also fits within the exception to the exception as a record of an initial arrest.

Is there any support in the APR for the state's interpretation of "record" as only the "Arrest Custody Report"?   The state's principal argument is that the APR uses "record" to designate categories of documents which are categorically exempt while it uses "information," "documents," or other terms to refer to certain contents of public files otherwise subject to production.[1]

---

[1] The APR defines "public record" expansively to include "*any* written or *recorded information, regardless of physical form or characteristics*, which is produced or acquired in the course of public agency business."  1 V.S.A. § 317(b) (emphasis added).

4

The court does not accept this interpretation. First, the APR uses the word "record" to describe the materials in most exceptions. Not all of these are absolute, categorical exceptions. Exception 12, for example, exempts "*records* concerning formulation of policy where such would constitute a clearly unwarranted invasion of personal privacy." This is not a categorical exemption. It requires a judgment about the contents and impact of the record. Exception 16, on the other hand, is a categorical exemption for "any voluntary *information*" provided to the state under certain circumstances prior to the enactment of the APR. In the court's view, the APR uses the words "records," "lists," "information" and "documents" interchangeably and without reference to an unexpressed code of meaning.

With respect to the state's argument that a record cannot be both a record of an investigation and an arrest record, it is enough to observe that arrest records are commonly included within the records of a broader investigation. The statute itself envisions a large category of police investigatory records – generally exempt from disclosure – except for records of the initial arrest and charge.

## V. Policy Concerns

This court is not asked to rule on whether production and public distribution of the DUI video is a good idea or a poor one. The court's only task is to apply the APR to this particular record. But since there has been argument concerning the need to protect the privacy of police investigations, undercover informants, victims, and people who are ultimately exonerated, the court will address these concerns as best as it can on a thin factual record.

There is no claim in this case that disclosure of the DUI video will compromise a confidential informant or reveal anything about a continuing investigation. There is also no claim that it will disclose information about a person who has been found innocent of the charge. There is no individual victim. The investigation and arrest occurred within a few minutes in a public setting. In short, the state's policy concerns have validity, but they do not apply to this particular record of an initial arrest.

## CONCLUSION

The court grants the plaintiff's request for a final injunction and orders production of the video to plaintiff not later than 4:30 pm, October 28, 2010.

Dated: October 27, 2010

_____
Geoffrey Crawford,
Superior Court Judge

5