Galloway v. Town of Hartford, No. 473-8-10 Wrcv (Hayes, J., Nov. 8, 2010)

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

STATE OF VERMONT

| | |
|---|---|
| SUPERIOR COURT | CIVIL DIVISION |
| Windsor Unit | Docket No. 473-8-10 |
| Wrcv | |

Anne Galloway,
  Plaintiff

  v.

Town of Hartford,
  Defendant

FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER

A hearing on the merits was held on October 28, 2010. The plaintiff appeared, and was represented by Dan Barrett, Esq., and the defendant was represented by Joseph Farnham, Esq. The evidence was largely based on stipulation. The parties agreed that in deciding the issues the court could rely on the affidavit of Fred Peyton, a police officer with the Hartford Police Department, dated August 27, 2010, attached to the Town's motion for summary judgment filed on August 30, 2010. Chief Glenn Cutting of the department also testified briefly. Both parties submitted written arguments in connection with their motions for summary judgment, and they relied on these as well. The court denied the motion for summary judgment on October 15, 2010, finding that there was a dispute between the parties as to the question regarding whether the activities of the police as to which records were being sought were a criminal investigation.

Based on the evidence presented, the court makes the following findings of fact: On May 29, 2010, the Springfield Police Department received a telephone call from a citizen who reported that she suspected criminal activity at an address in Hartford.

Police officers Peyton, Adams and Moody went to that address. Officer Peyton met with the complaining witness there. She told him that the residence appeared "ransacked", that there was an unknown male person upstairs of whom she was fearful, and that something was burning inside. The police entered the residence. They found a good deal of smoke. They searched the residence, found a male inside, and attempted to communicate with him. During the course of their contacts with this person officers sprayed him with pepper spray, and handcuffed him by force. He was released from handcuffs within 15 minutes. He was then transported to a medical facility. He was not charged with any offense. It was decided that there was no probable cause to charge this person with any criminal offense.

The plaintiff seeks the release of all of the Town's records related to this incident. Chief Cutting stated that the officers involved were "miked" so there are audio recordings of the events at the residence. There is also a tape of the initial 911 call to the police. The officers' reports and the dispatcher's log are also among the records related to this event in the custody of the Town. There may also be written witness statements. These are the records that the plaintiff seeks under the Public Records Act.

The plaintiff, a journalist, first made a written request for the records to the chief of police, which was denied. She appealed to the town manager, who upheld the chief's decision. The plaintiff then she filed this action.

Chief Cutting testified that he has referred the Department's conduct in connection with this incident to the Vermont Department of Public Safety for investigation, and that investigation had not been concluded as of the date of the hearing. The Town did not rely upon this investigation as a basis for non-disclosure of its records.

CONCLUSIONS OF LAW

The plaintiff seeks disclosure of the Town's records under the public records law, 1 V.S.A. §§ 315 et seq. The stated policy and intent of the law is "to provide for free and open examination of records consistent with Chapter I, Article 6 of the Vermont Constitution." Section 315. The legislature specifically recognized that "it is in the public interest to enable any person to review and criticize [the] decisions [of governmental officers] even though such examination may cause inconvenience or embarrassment," subject to individuals' privacy rights. Id. Therefore, the law is to be "liberally construed" to carry out these goals. Id. The Supreme Court has affirmed that the statute should be liberally construed, and that, in fact, any exceptions listed in the statute "should be construed strictly against the custodians of the records and any doubts should be resolved in favor of disclosure." Caledonian-Record Publishing Co. v. Walton, 154 Vt. 15, 20 (1990). The agency seeking to avoid disclosure "cannot discharge [its] burden [of proof] by conclusory claims or pleadings. They must make the specific factual record necessary to support the exception claim." Finberg v. Murnane, 159 Vt. 431, 438 (1992).

The statute defines a public record broadly as "any written or recorded information, regardless of physical form or characteristics, which is produced or acquired in the course of public agency business." Section 317(b). There is an exception related to investigation of crimes, as follows:

> records dealing with the detection and investigation of crime, including those maintained on any individual …; provided, however, records relating to management and direction of a law enforcement agency and records reflecting the initial arrest of a person and the charge shall be public.

3

Section 317(c)(5).   The Town relies upon this exception for its denial of access to the records requested.

The sole question for the court, therefore, is whether, applying the standards set forth above, the Town has demonstrated that the records in question "deal… with the detection and investigation of crime." It is clear that the first contact that the Department received from a member of the public was a complaint of suspected criminal activity. However, at the end of the interaction, the police had apparently determined that no crime had been committed.   The "suspect" was not and will not be charged with any criminal or civil offense related to this event.  No citation was issued, and no affidavit of probable cause was drafted by any officer involved in the matter.

The public interest in full access to records "is particularly acute in the area of law enforcement."   Caledonian Record, supra, at 21.   In Caledonian Record, which focused on whether criminal citations were exempt from disclosure, the Court noted that cases such as this one are decided "in the shadow of the First Amendment…public and media … right of access to information relating to the activities of law enforcement officers and to information concerning crime  in the community." Id.  However, the Court also noted that "the state has significant interests in protecting the public from criminal activity, prosecuting those who commit crimes, and protecting the privacy rights of individual citizens.  These interests may, at times, override the interest in public disclosure. The Public Access statute was intended to mirror the constitutional right of access, and as such, the exceptions enumerated in the statute allow a balancing of the competing interests." Id.

In determining whether citations for criminal offenses should be included within the "arrest" exception stated above, and therefore subject to full disclosure, the Supreme Court looked to other states' decisions under analogous statutes for guidance. Relying on decisions from Ohio and Texas, the Supreme Court held that "arrest records are not records dealing with the detection and investigation of crime but rather are the product of such an investigation," and should therefore be disclosed under the Act. Id. at 23 (emphasis added). The court went on to determine that citations were equivalent to arrests in being the result of rather than a part of a criminal investigation, and therefore fell within the "arrest" exception.

Here, both parties spend considerable energy arguing whether or not the facts support a finding that the individual whom the police encountered on this occasion was subjected to an arrest. However, according to Caledonian Record, supra, the term "arrest" in the public record statute plays a very different role than it does in other contexts related to criminal prosecution or litigation related to 4th and 5th Amendment rights. In the public records exception, "arrest" is used as a term to distinguish cases in which a criminal investigation has ended, and an "arrest," or citation, is the product of that investigation, from those cases in which there is still an ongoing criminal investigation. The Court clearly found that only those records that directly relate to an active, ongoing criminal investigation, or that are protected by some other clearly enunciated and demonstrated protected privacy or public interest, would the statutory exception protect agency records under Section 317(b)(5). Id. at 23-26. The Court specifically found that the so-called "arrest exception" to the investigatory records exemption is not an exception at all, but rather a legislative attempt to insure with

5

complete clarity that it is only <u>investigative</u> records that need not be disclosed. Records that state the final outcome of an investigation are not investigative records. <u>Id</u>. at 25-26.

In this instance, the police were clearly involved, initially, in an investigation into suspected criminal activity. Under Section 317(b)(5), the records that they created during the course of that investigation are not subject to disclosure. However, the stipulated facts also show that any criminal investigation concluded at some point during the process of police interaction with the individual in question. The Town conceded at the hearing that the investigation was in fact over, and that no criminal charges were going to result. It is not clear what portion of the town's records were created <u>after</u> it had been determined that this was no longer a criminal investigation. It is also not clear whether that conclusion is contained in any specific memorandum, letter, or other document. What is clear is that under the public records act, any and all records that were generated by the Town after the decision that there would be no criminal charge are not subject to the claimed exemption, and should be disclosed forthwith.

The court can see no legitimate policy basis for any other finding. When the final result of a criminal investigation is that a suspect has been cleared of wrongdoing, the records that show that outcome should be subject to public disclosure, just as they are when a person is in fact charged with a crime. The records that show the <u>outcome</u> of a criminal investigation are not the records "of the investigation", but its product, and therefore they are subject to disclosure under the analysis used in <u>Caledonian Record</u>, <u>supra</u>.[1]

---

[1] The court notes that this ruling is not meant to suggest that disclosure of records of ongoing investigations where a suspect is still under suspicion would be required under the public records law, even if such suspicions are tenuous. Rather, it is limited to cases in which the police initially suspect a crime has been committed, but then determine definitively either that there has been no crime, that the conduct is such that

6

The court therefore directs that the Town disclose any and all documents and records in its possession related to the incident in question that were created or obtained _after_ the decision had been made that no further criminal investigation would be pursued in connection with the individual whom the police contacted on the date in question. This disclosure should be made within 7 days of receipt of this order.

The court also orders that the records of the Town that were made in connection with this incident up until the time that it was decided that no criminal charges would be brought against the individual in question are exempt from disclosure under Section 317(b)(5), and need not be disclosed.

If either party believes that an additional hearing is necessary in order to determine what records as subject to disclosure, which seems highly likely in light of the sparse evidentiary record created so far, they should file written request, with any supporting explanation and an estimate as to the time needed for any such hearing, within three days of receipt of this order. If such a hearing request is granted, the court will require that the Town immediately prepare and file a Vaughan index of all records related to this incident, including both those it believes are subject to disclosure and those it believes are exempt from disclosure under this ruling, in chronological order of preparation.

---

no criminal charge is warranted, or that they have the wrong suspect. The record of such a determination, like a citation or criminal arrest, is the "product" of such an investigation, and is not excepted from public disclosure. The court also notes that it is not ruling on the applicability of any other possible exemptions under the public records law to protect the suspect's privacy, as none have been raised.

Dated at Woodstock this 4th day of November, 2010.

                                _____

                                Katherine A. Hayes
                                Superior Court Judge

                                _____

                                William Boardman
                                Assistant Judge