Burlington Police Officers' Assoc. v. Burlington Police Dept., No. 378-4-19 Cncv (J. Toor, July 1, 2019).

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

VERMONT SUPERIOR COURT
CHITTENDEN UNIT
CIVIL DIVISION

| | |
|---|---|
| BURLINGTON POLICE OFFICERS' ASSOCIATION, <br>  Plaintiff <br><br> v. <br><br> BURLINGTON POLICE DEPARTMENT and THE CITY OF BURLINGTON, <br>  Defendants | Docket No. 378-4-19 Cncv |

RULING ON CROSS-MOTIONS FOR SUMMARY JUDGMENT

This case is a request for records under the Public Records Act, 1 V.S.A. § 315 et seq. Specifically, Plaintiff Burlington Police Officers' Association (the Association) seeks two videos, an affidavit, and any related reports prepared by the arresting officer concerning a March 11[1] incident involving a Burlington police officer and a now-deceased citizen, Douglas Kilburn.

Procedural History

The court held an early status conference. The parties agreed that no evidentiary hearing was required and the Defendants (jointly "the City") would file a motion to dismiss or for summary judgment, or some sort of "appellate briefing." The City noted that it would likely rely upon two affidavits, one from the state police and one from the Burlington police chief. The Association's counsel agreed that the court could consider those affidavits. The City then filed a memo of law but no motion; the Association filed a motion for summary judgment. As the court has no certified

---

[1] The Complaint refers to March 12, but subsequent filings establish that it was March 11.

record on which to rule "on appeal," the procedural posture of the City's filing is somewhat hazy. The court will treat both filings as motions for summary judgment.

Undisputed Facts

The City has not filed any opposition to the Association's statement of material facts, so to the extent it is supported by the record it is deemed admitted. V.R.C.P. 56(e). As the Association has agreed that the "Statement of the Case" in the City's brief is accurate, *see* Plaintiff's Cross-Motion at 1, despite the absence of a statement of material facts the court also treats those facts as admitted.

In sum, the dispute here is over a request for records related to an altercation at the University of Vermont Medical Center on March 11 during which Burlington Police Officer Cory Campbell and Douglas Kilburn each struck each other. Kilburn was arrested and charged with Simple Assault on a Protected Professional and Disorderly Conduct. He was treated at the hospital. He was apparently given a court date for the 12th but did not appear because he was still at the hospital. He left the hospital later that day. However, on March 14 he was discovered deceased in his bed. Because his death was ruled a homicide by the medical examiner[2], the State Police opened a criminal investigation. The Burlington Police shared with them (1) body camera footage from the incident, (2) a "use of force" report prepared by Officer Campbell, and (3) a charging affidavit for Kilburn prepared by another Burlington officer. The State Police also obtained video surveillance footage from the ambulance bay at the hospital. Burlington Police also have a copy of that video, apparently provided by the State Police.

Plaintiff's counsel requested a copy of the videos from the State Police. His request was denied. He then requested copies from the Burlington Police, as well as the report written by

---

[2] The examiner's description was "undetermined terminal mechanism due to multiple underlying conditions with contributory causes."

Officer Campbell and the charging affidavit. All of the records requested other than the surveillance video from the hospital were created in the course of arresting or charging Kilburn.[3] The City denied the request, asserting that three exemptions to disclosure applied: (1) detection and investigation of a crime, (2) identification of a witness or victim of a crime, and (3) medical or psychological facts concerning an individual. The City also noted that even if it were to disclose some of the records, redactions would be required. Plaintiff appealed the denial to the Chief of Police, and agreed to redactions of personal identifiers to protect the identity of any private individuals who may have been witnesses or whose medical information might be in the records. The Chief denied the appeal. This appeal followed.

The State Police have submitted an affidavit in support of the City's position here. That affidavit expresses the concern that providing the video before Officer Campbell is interviewed may taint Campbell's description of what happened. The affidavit states that "it is not the practice of the Vermont State Police to allow witnesses and/or targets of an investigation to review evidence prior to being interviewed." Affidavit of Det. Sgt. Angela Baker, ¶ 10. "This is to ensure that the individual reports what he/she actually recalls, not what the evidence they have just reviewed reveals to them." Id. The affidavit goes on: "This is especially important with video evidence, as videos often show a different perspective than viewed by a witness." Id.

The Baker affidavit also explains that "it is not the practice of Vermont State Police to provide to members of the public video evidence during an investigation" because this could interfere with the investigation by leading witnesses to alter their testimony either intentionally or unintentionally. Id. ¶ 12. Finally, the affidavit states that "Vermont State Police policy provides

---

[3] The Association asserts that all of the records were created in the course of the arrest, but the record does not support that assertion. The hospital video was not created for that purpose or collected by the Burlington Police in connection with the charges against Kilburn. Instead, it was obtained by the State Police in connection with their death investigation.

that its audio and video recordings may be exempt from disclosure when it is determined that a recording relates to the investigation and detection of a crime." Id. ¶ 13.

Discussion

The Vermont Public Records Act (the Act) provides that records held by public agencies such as the City are generally open to the public, but creates categories of records that are exempt from disclosure. 1 V.S.A. §§ 315, 317. The City has the burden of proving that an exemption applies. Wesco, Inc. v. Sorrell, 2004 VT 102, ¶ 10, 177 Vt. 287. Because "open access to governmental records is a fundamental precept of our society," we "construe exceptions to the [Act] strictly against the custodians of records, and resolve any doubts in favor of disclosure." Galloway v. Town of Hartford, 2012 VT 61, ¶ 9, 192 Vt. 171(internal quotation and citations omitted). Moreover, "[t]he public interest in knowing what the government is doing is particularly acute in the area of law enforcement." Rutland Herald v. Vermont State Police, 2012 VT 24, ¶ 9, 191 Vt. 357 (internal quotation and citation omitted).

The exemption relied upon by the City here is as follows: "Records dealing with the detection and investigation of crime, but only to the extent that the production of such records . . . could reasonably be expected to interfere with enforcement proceedings." Id. § 317(c)(5)(A)(i).[4] In addition, the City asserts that if disclosure is required, redactions would be required pursuant to two other provisions. Those relate to "the identity of a private individual who is a witness to or victim of a crime" and "[p]ersonal documents relating to an individual, including . . . medical or psychological facts concerning an individual." Id. §§ 317(c)(5)(D) and (c)(7).

---

[4] Defendants quote slightly different language for this exemption. The court is unclear where Defendants are finding that language.

The Association first argues that the "investigation of a crime" exemption is inapplicable because another provision of the Act mandates that "[n]otwithstanding" the investigatory exemption, "records relating to . . . the initial arrest of a person, including any ticket, citation or complaint issued for a traffic violation . . . and records reflecting the charge of a person *shall be public*." Id. § 317(c)(5)(B) (emphasis added). The use of the word "notwithstanding" makes clear that this provision is an exception from the exemption, and requires the disclosure of records that come within its description even if they would otherwise be exempt under the "investigation of a crime" exemption.

The City argues that there should be a distinction between records related to an investigation of the person arrested and investigations of someone else. The statute makes no such distinction. The City also suggests that the court is required to balance the two provisions—the one related to investigations and the one related to arrest records—on a case by case basis, and decide which interest is more important. That is not what the statute requires. As noted above, "notwithstanding" means that arrest records and charging records are disclosable regardless of whether they implicate an ongoing investigation. Whether that is the best policy choice when such records may affect another investigation is not for the court to assess: the Legislature has already made the policy choice. "[T]he Legislature wanted arrest records to be disclosed whether or not they fit within the general exception for records dealing with the detection and investigation of crime." Caledonian-Record Pub. Co. v. Walton, 154 Vt. 15, 25-26 (1990). "[T]he proviso clearly requiring the disclosure of arrest records contains no exception for ongoing investigations." Id. at 28.

The affidavit of probable cause in the case against Kilburn, at least once filed in support of an information filed in court as in this case, is unquestionably a record "reflecting the charge of a

5

person." Id. § 317(c)(5)(B). It therefore must be disclosed.[5] Whether the other records requested fit within this provision is less clear. The question is what is considered a record "relating to" the arrest of Kilburn. Id.[6]

A case involving a similar matter appears to answer the question. Galloway v. Town of Hartford, 2012 VT 61, 192 Vt. 171. There, a reporter sought records concerning an incident that ultimately led to no charges, the police asserted the "criminal investigation" exemption, and the Court discussed whether the incident nonetheless involved an arrest. Finding that it did, the Court concluded that all of the requested records should be disclosed as records relating to an arrest. Notably, the request was for "audio recordings of the incident, the witness's 911 call, officers' reports, the dispatcher's log, and written witness statements." Id. ¶ 5. The majority did not discuss the scope of the request, presumably because the parties did not raise it, but it was clearly aware of the issue because the dissent expressly objected on that basis. Id. ¶¶ 36-37 (arguing that "most of those records are outside of the scope of the arrest record"). The Court's final sentence directing reversal stated: "Under the facts of this case, all records considered by the trial court that were identified by the police as being generated as a result of the incident should be considered records reflecting the homeowner's initial arrest and are to be disclosed." Id. (text following ¶ 15). The Court did not explain what "facts of this case" it was considering, or what facts might lead to a different conclusion. Nonetheless, its ruling appears to stand for the general proposition that

---

[5] It is unclear why the Association has not obtained the affidavit directly from the court. While affidavits of probable cause are not public court records until a judge has found probable cause, Rules for Public Access to Court Records, Rule 6(b)(24), the docket sheet submitted by the Association reflects that probable cause was found by a judge (on two of three counts) on March 12.

[6] Some state statutes have express language about what arrest-related materials must be disclosed. *See, e.g*., Conn. Gen. Stat. Ann. § 1-215 (West) "(1) the name, race and address of the person arrested, the date, time and place of the arrest and the offense for which the person was arrested, and (2) in addition, in a case in which (A) the arrest has been by warrant, the arrest warrant application, including any affidavit in support of such warrant, or (B) the arrest has been made without a warrant, the official arrest, incident or similar report"). Vermont's does not.

records "relating to" an arrest should be broadly construed. The bodycam videos and Officer Campbell's report (or reports)[7] are essentially identical to what the Court ordered disclosed in Galloway as "related to" an arrest, and the City offers no basis here for distinguishing this case from that one. They must be disclosed.

With respect to the video from the hospital, however, the court finds the City's position at least potentially supportable. The State Police obtained the video solely for use in a subsequent criminal investigation after Mr. Kilburn's death. It is not part of the records related to his arrest or charge. The question is therefore whether it contains information that "could reasonably be expected to interfere with enforcement proceedings." 1 V.S.A. § 317(c)(5)(A)(i). The Baker Affidavit asserts no specific facts about who or what is in the video, but instead merely states a general policy not to show witnesses such materials before their interviews. This paints with too broad a brush. To be withheld, the video must itself contain information that could potentially interfere with the investigation. For example, if the video showed nothing but Kilburn standing at the door of the emergency department, it might contain nothing at all of relevance to the investigation. No matter how reasonable the State Police policy regarding withholding videos until after an interview may be, the Public Records Act does not permit a general police department policy to control in such a situation.

The problem for the court is that the record does not provide sufficient facts from which to determine whether disclosure of the video may or may not endanger the investigation. Thus, the court will require the City to submit further information on this issue.[8]

---

[7] The complaint suggests there may have been more than one report written by Officer Campbell, although elsewhere in the filings the parties seem to suggest there is only one. The court's order will cover any reports he wrote in connection with the incident.

[8] The Association argues that the City has waived its opportunity to do so, and the court agrees that the proper course would have been for the City to submit its complete argument when it filed its initial memorandum. The court will expect the City to do so in any future public records cases. However, the court also has a duty to properly apply the

<u>Order</u>

The City is directed to promptly disclose to the Association the bodycam videos, any reports written by Officer Campbell in connection with the March 11 incident, and the affidavit written in support of the criminal charges against Mr. Kilburn. The City may redact the materials to protect "the identity of a private individual who is a witness to or victim of a crime" and "[p]ersonal documents relating to an individual, including . . . medical or psychological facts concerning an individual." 1 V.S.A. §§ 317(c)(5)(D) and (c)(7). Any objection to the redactions may be raised with the court by later motion.

The City is directed to submit an *in camera* affidavit (with only the cover letter copied to the Association) within 10 days explaining precisely what in the hospital video might create a danger to the investigation. If the City believes the court will need to see the video to analyze the affidavit, it may choose to submit a copy for the court's in camera review. It is not required to do so.

Dated at Burlington this 1st day of July, 2019.

_____
Helen M. Toor
Superior Court Judge

---

statute, and cannot do so without the necessary record. *See, e.g.*, <u>Shlansky v. City of Burlington</u>, 2010 VT 90, ¶ 18, 188 Vt. 470 ("remand is necessary for the City to clearly establish the relevance of the documents being withheld").