2012 VT 14

### Stephen Robert Bain v. Windham County Sheriff Keith Clark and Tracy Shriver, Windham County State's Attorney

[44 A.3d 170]

No. 09-468

Present: Reiber, C.J., Dooley, Johnson, Skoglund and Burgess, JJ.

Opinion Filed March 2, 2012

*Stephen R. Bain*, Pro Se, St. Johnsbury, Plaintiff-Appellant.

*William H. Sorrell*, Attorney General, and *Jana M. Brown* and *David Cassetty*, Assistant Attorneys General, Montpelier, for Defendant-Appellee Shriver.

*Barbara R. Blackman* and *Robin A. Freeman, Jr.,* of *Lynn, Lynn & Blackman, P.C.,* Burlington, for Defendant-Appellee Clark.

*Dan Barrett,* Montpelier, for Amicus Curiae American Civil Liberties Union Foundation of Vermont.

¶ 1. **Johnson, J.** In this appeal, we are asked to consider whether "radio dispatch and unit logs" generated by police are exempt from disclosure under the Vermont Access to Public Records Act. Stephen Bain, pro se, requested such documents from Windham County Sheriff Keith Clark, and filed suit when the records were not produced. The trial court dismissed Bain's suit against Clark, finding the records exempt from disclosure under 1 V.S.A. § 317(c)(5) as "records dealing with the detection and investigation of crime." Bain did not submit a records request to Windham County State's Attorney Tracy Shriver, and the court dismissed Bain's claim against her for lack of jurisdiction. We affirm the court's decision as to Shriver, and reverse and remand as to Clark.

¶ 2. Bain was incarcerated as a habitual offender following convictions in 2005 for possession of stolen property and possession of marijuana. Bain believes that police unlawfully entered his home following his May 2003 arrest, and he has pursued this claim in numerous suits. This issue was raised and squarely rejected in Bain's criminal appeal. See *State v. Bain,* 2009 VT 34, ¶¶ 14-17, 185 Vt. 541, 975 A.2d 628 (upholding trial court's finding that no warrantless search of defendant's home occurred). We have also rejected as unsupported Bain's assertion, made in connection with post-verdict motions, that the police possessed and refused to disclose exculpatory "radio dispatch unit logs." See *State v. Bain,* No. 2009-235, 2010 WL 287030, at **1-2 (Vt. Jan. 15, 2010) (unpub. mem.), available at http://www.vermontjudiciary. org/d-upeo/upeo.aspx (finding that Bain failed to show that police "radio logs," which he believed were exculpatory, in fact existed where State had represented during criminal trial that the records did not exist).

¶ 3. Beginning in 2006, Bain filed a series of lawsuits against Clark and others in federal court, focusing again on allegations of police misconduct. All of these complaints have been dismissed. In November 2008, Bain filed the instant complaint against defendants, reiterating his allegation that police had unlawfully entered

his home without a warrant five and a half years earlier. Bain maintained that defendants were unlawfully withholding exculpatory evidence in violation of his rights. He sought relief under the rule governing discovery in criminal cases, V.R.Cr.P. 16; he also sought the production of "any and all computer, telephone or otherwise generated radio dispatch unit log[s] of [his] arrest and the bona fide activities of law enforcement for the days of May 22 and 23, 2003" under the Vermont Access to Public Records Act (PRA). Bain stated that he had requested these documents from Clark in December 2007, but received no response. He did not allege that he requested the documents from Shriver.

¶ 4. Both defendants moved to dismiss Bain's complaint. Shriver pointed out that Bain had failed to make a public records request from her office, and that he thereby failed to exhaust his administrative remedies. She also asserted that the documents fell within 1 V.S.A. § 317(c)(5) (2009),[1] which exempts from disclosure:

> records dealing with the detection and investigation of crime, including those maintained on any individual or compiled in the course of a criminal or disciplinary investigation by any police or professional licensing agency; provided, however, records relating to management and direction of a law enforcement agency and records reflecting the initial arrest of a person and the charge shall be public.

Clark similarly sought dismissal under § 317(c)(5), and he also requested injunctive relief to preclude Bain from continuing to file similar claims against his office.

¶ 5. In November 2009, the court granted defendants' motions. With respect to Shriver, the court agreed that Bain failed to make a proper records request under 1 V.S.A. § 318, and thus failed to exhaust his administrative remedies. See *Bloch v Angney*, 149 Vt. 29, 31, 538 A.2d 174, 175 (1987) (party must exhaust administrative remedies under 1 V.S.A. § 318 prior to seeking relief in superior court). The court rejected Bain's assertion that his request to Clark served as a request to Shriver as well. It found no support for the proposition that the Sheriff's Office and the State's Attorney's Office were equivalent for

---

[1] A minor grammatical change was made to the quoted portion of this provision in 2011. We use the statute in effect at the time of the trial court's decision.

purposes of a public records request, or that the state's attorney could be charged with having to respond by resort to its own files to a records request made solely to a police agency within the same county.

¶ 6. The court next considered Clark's contention that the records were exempt under § 317(c)(5). In addressing this issue, the court acknowledged the "strong policy favoring access to public documents and records." *Springfield Terminal Ry. v. Agency of Transp.*, 174 Vt. 341, 345, 816 A.2d 448, 452 (2002). It noted as well that PRA exemptions are construed strictly against the custodian of such records, and that the custodian must do more than provide "conclusory claims or pleadings" to establish that the exemption applies. *Finberg v. Murnane*, 159 Vt. 431, 438, 623 A.2d 979, 983 (1992); see also 1 V.S.A. § 319(a) (agency bears burden of justifying its decision to deny access).

¶ 7. The court found the records here were plainly implicated in "the detection and investigation of a crime," namely, the crimes for which Bain had been tried and convicted. It noted that the request bore no relationship to statistical reports or budget submissions or policy statements that conceivably informed the "management and direction" of a sheriff's office. Nor could Bain's broad charges of criminal collusion by the investigating officers bring his claim within the "management and direction" exception on the attenuated theory that the records would "expose" incompetence in the management of the department. Similarly, the court rejected the notion that the radio dispatch and unit logs and other documents pertaining to the day of Bain's arrest were records reflecting the initial arrest of an individual.

¶ 8. The court also rejected Bain's argument that, even if the records fell within the exemption for the detection and investigation of crime, Clark must still produce them because the criminal prosecution had concluded. Bain cited 1 V.S.A. § 317(c)(14), which exempts from disclosure "records which are relevant to litigation to which the public agency is a party of record, provided all such matters shall be available to the public after ruled discoverable by the court before which the litigation is pending, but in any event upon final termination of the litigation." The court found no suggestion that the Legislature intended this exemption to modify the separate provision governing records of detection and investigation of crime. It emphasized that Bain could not pursue his obsession with exposing investigatory records he believed would

be exculpatory through the PRA; his rights of discovery were encompassed by the criminal proceedings and they were not a proper subject of collateral review.

¶ 9. Finally, the court granted Clark's motion for injunctive relief under Vermont Rule of Civil Procedure 65. It declared Bain a vexatious litigant and enjoined him from continuing to file suit against Clark for claims arising out of his 2005 conviction without first securing the court's approval. This appeal followed.

¶ 10. On appeal, Bain essentially reiterates the claims he raised below. He argues that his records request on Clark served as a request on Shriver because the two are "in privity." He restates his position that the records he seeks are not exempt from disclosure under § 317(c)(5). The American Civil Liberties Union (ACLU) has filed an amicus brief, arguing in support of disclosure. It advances various policy arguments to support Bain's contention that § 317(c)(5) does not extend to the records at issue here. Bain also challenges the court's order granting injunctive relief to Clark.[2]

¶ 11. Turning first to Bain's complaint against Shriver, we agree that dismissal was warranted because Bain failed to exhaust his administrative remedies. See *Nichols v. Hofmann*, 2010 VT 36, ¶ 4, 188 Vt. 1, 998 A.2d 1040 (Supreme Court reviews rulings on motions to dismiss de novo). As the trial court explained, the administrative procedure for requesting public records is set forth in 1 V.S.A. § 318. By statute, individuals must submit such requests to the custodian of a public record under § 318(a) before they will be deemed to have exhausted their administrative remedies. *Id.* § 318(b). Only those who have been aggrieved by the denial of a request for public records can apply to the superior court for relief. *Id.* § 319(a). When a party fails to comply with this procedure, the superior court lacks subject matter jurisdiction over a public records act complaint and such complaint must be dismissed. *Bloch*, 149 Vt. at 31, 538 A.2d at 175.

¶ 12. Bain offers no compelling argument to the contrary. His assertion that these two defendants are "in privity" for

---

[2] We do not address Bain's argument that the trial judge should have recused himself because this issue was not raised below. *Pion v. Bean*, 2003 VT 79, ¶ 45, 176 Vt. 1, 833 A.2d 1248 ("Contentions not raised or fairly presented to the trial court are not preserved for appeal." (quotations omitted)). We reject as unfounded Bain's assertion that the trial court failed to timely consider his case.

purposes of a PRA request is wholly without merit. Nothing in the PRA supports this argument, and the cases cited by Bain are inapposite. See, e.g., *First Wisconsin Mortg. Trust v. Wyman's, Inc.*, 139 Vt. 350, 358-59, 428 A.2d 1119, 1123 (1981) (for purposes of applying doctrine of res judicata, the "test for privity . . . is whether the parties have really and substantially the same interest in the property in issue"). Because Bain failed to request any public records from Shriver, his PRA claim against her was properly dismissed.

¶ 13. We thus turn to the heart of this case and consider whether the court erred in dismissing Bain's complaint against Clark. As noted above, Bain sought the production of "any and all computer, telephone or otherwise generated radio dispatch unit log[s] of [his] arrest and the bona fide activities of law enforcement for the days of May 22 and 23, 2003," and his complaint was dismissed for failure to state a claim on which relief could be granted. In reviewing such rulings, we employ the same standard as the trial court: "A motion for failure to state a claim may not be granted unless it is beyond doubt that there exist no facts or circumstances that would entitle the plaintiff to relief." *Kaplan v. Morgan Stanley & Co.*, 2009 VT 78, ¶ 7, 186 Vt. 605, 987 A.2d 258 (mem.) (quotations omitted). "We assume that all factual allegations pleaded in the complaint are true, accept as true all reasonable inferences that may be derived from plaintiff's pleadings, and assume that all contravening assertions in defendant's pleadings are false." *Mahoney v. Tara, LLC*, 2011 VT 3, ¶ 7, 189 Vt. 557, 15 A.3d 122 (mem.) (quotation, brackets, and ellipses omitted).

¶ 14. Applying this standard, we must reverse and remand. As a threshold matter, it is not clear that the records Bain seeks actually exist. The record shows that in 2004, in connection with his criminal proceedings, Bain's then-defense attorney requested from the Windham County State's Attorney:

> all state police and sheriff radio log, dispatcher log, computer log, and any other computer generated or automobile related logs for May 22, 2003 and May 23, 2003. . . . In particular, I seek a log of all officers and sheriffs that will show, for each day, the location and calls relating to each officer, their involvement and/or noninvolvement with my client's house, his arrest on May

22nd, and any search incident to or related thereto. I have not been provided with the computer dispatcher's log or the radio log for each officer for both days. It is my understanding that such exists, and that it can be copied.

This request was apparently forwarded to the Windham County Sheriff's Office, and an administrative secretary for the Sheriff's Office responded as follows: "Be advised that our computer system that we were using on that day does not generate a radio log or dispatch log. The dispatchers will make some notes on the call itself, but no actual log is made. Also the dispatcher is most often alone and so the times are frequently incorrect . . . ." It is not clear if any dispatcher notes were provided to Bain's attorney.

¶ 15. Bain now avers, as he did in a prior case before this Court, that Clark's attorney has admitted in court that the police logs he seeks do exist. He provides no transcript or other record support for this assertion. At the same time, however, Clark's attorney does not disavow this statement, and defendants take no position in their briefs on the existence of these records. We are thus left to wonder, do these records exist? If not, why haven't defendants relied on this position to defeat Bain's claim? If they do exist, why did the Sheriff's Office say otherwise in 2004? These types of questions go to the heart of the PRA and they raise issues that free disclosure of public documents can put to rest. See, e.g., *Caledonian-Record Publ'g Co. v. Walton*, 154 Vt. 15, 21, 573 A.2d 296, 299 (1990) (explaining that this nation's founding fathers "thought secrecy in government one of the instruments of Old World tyranny and committed itself to the principle that a democracy cannot function unless the people are permitted to know *what their government is up to*" (citation omitted)).

¶ 16. Assuming these radio dispatch and unit logs do exist, we cannot discern from the record precisely what information they might contain. We thus cannot determine if they are records "dealing with the detection and investigation of crime" and therefore exempt from disclosure under 1 V.S.A. § 317(c)(5). Section 317(c)(5) exempts those records:

dealing with the detection and investigation of crime, including those maintained on any individual or compiled in the course of a criminal or disciplinary investigation by any police or professional licensing agency; provided,

however, records relating to management and direction of a law enforcement agency and records reflecting the initial arrest of a person and the charge shall be public.

We cannot assume, consistent with the purpose of the PRA, that simply because the records at issue were generated by a law enforcement agency, they necessarily are records "dealing with the detection and investigation of crime." To so hold would allow for a "potentially limitless" exemption. *Kade v. Smith*, 2006 VT 44, ¶ 8, 180 Vt. 554, 904 A.2d 1080 (mem.).

¶ 17. As the Legislature has made clear, the PRA must be "liberally construed with the view towards carrying out" its legislative purpose of allowing "free and open examination of records consistent with Chapter I, Article 6 of the Vermont Constitution." 1 V.S.A. § 315; see also Vt. Const., ch. I, art. 6 (recognizing that government officials are legally accountable to the people). "Officers of government are trustees and servants of the people and it is in the public interest to enable any person to review and criticize their decisions even though such examination may cause inconvenience or embarrassment." 1 V.S.A. § 315. The common law similarly "protects the right in all citizens to inspect the public records and documents made and preserved by their government when not detrimental to the public interest." *Walton*, 154 Vt. at 20, 573 A.2d at 299 (quotation omitted). Indeed, "[w]e do not overstate the case in saying that open access to governmental records is a fundamental precept of our society." *Shlansky v. City of Burlington*, 2010 VT 90, ¶ 12, 188 Vt. 470, 13 A.3d 1075. Consistent with these policies, we strictly construe exemptions to the PRA "against the custodians of the records and any doubts should be resolved in favor of disclosure." *Walton*, 154 Vt. at 20, 573 A.2d at 299.

¶ 18. We have also noted that the "Public Access statute was intended to mirror the constitutional right of access, and as such, the exceptions enumerated in the statute allow a balancing of the competing interests." *Id.* at 21, 573 A.2d at 300. There is a strong public interest in disclosure of public records, and this interest "is particularly acute in the area of law enforcement." *Id.* at 21, 573 A.2d at 299. Of course, the State also has "significant interests in protecting the public from criminal activity, prosecuting those who commit crimes, and protecting the privacy rights of individual

citizens," and "[t]hese interests may, at times, override the interest in public disclosure." *Id.*

¶ 19. We construed § 317(c)(5) in *Walton,* 154 Vt. at 23, 573 A.2d at 300-01, and found *Houston Chronicle Publishing Co. v. City of Houston,* 531 S.W.2d 177 (Tex. Ct. App. 1975), persuasive in doing so. At the time *Houston* was decided, Texas law exempted from disclosure those "records of law enforcement agencies that deal with the detection and investigation of crime and the internal records and notations of such law enforcement agencies which are maintained for internal use in matters relating to law enforcement." *Houston Chron. Publ'g Co.,* 531 S.W.2d at 184 (quotation omitted).[3] The court determined that this language did not encompass police blotters, which included personal information about the person arrested and the circumstances of the arrest; "show-up sheets," which were maintained for each twenty-four hour period and showed in chronological order the name of each person arrested and related information; and "arrest sheets," which were similar to show-up sheets. *Id.* at 180, 185.

¶ 20. The court reached a different conclusion with respect to much of the information included in "offense reports." *Id.* These reports included not only the offense committed, and details concerning the complaining witnesses, other witnesses, and related information, but they could also include a synopsis of a purported confession, officers' speculations about a suspect's guilt, investigating officers' views on a witness's credibility, statements by informants, ballistics reports, fingerprint comparisons, and blood and other laboratory tests, including the results of polygraph tests and other investigative reports. *Id.* at 179. As to this information, the court found that the release of such information might "endanger the position of the State in criminal prosecutions," "reveal the names of informants," and "pose the threat of intimidation of potential prosecution witnesses." *Id.* at 187.

█ █ ¶ 21. We cited these same policy concerns in *Walton,* where we concluded that neither arrest records nor criminal

---

[3] This provision has since been modified and now provides express standards to evaluate the type of information related to the "detection, investigation, or prosecution of crime" that is exempt from disclosure. See Tex. Gov't Code Ann. § 552.108. Information is exempt, for example, if its disclosure "would interfere with the detection, investigation, or prosecution of crime." *Id.* § 552.108(a)(1). This exemption does not extend to "basic information about an arrested person, an arrest, or a crime," which must be disclosed. *Id.* § 552.108(c).

citations were "records dealing with the detection and investigation of crime" under 1 V.S.A. § 317(c)(5). Drawing on case law from other jurisdictions, we recited that:

> Information concerning the operations of the police department in making arrests and the charges upon which arrests are made is vital to the democratic system; and presumptively, by statute, the records are to be open. While in some cases involving police functions there is an overriding public interest in preserving secrecy (*e.g.*, in the investigation of pending or proposed criminal charges), no overriding public-interest concern is discernable when the executive act of arrest has been completed.

*Walton*, 154 Vt. at 24, 573 A.2d at 301 (quotation omitted). We agreed that "the disclosure of arrest records does not involve such a detriment to the public interest so as to overweigh the strong public policy behind public access to government records." *Id.*

■■ ¶ 22. Because the evidence in this case has not yet been fully developed, we cannot discern if police radio and dispatch unit logs are the type of records that the Legislature intended to shield from view under § 317(c)(5). On remand, the court's evaluation of whether these logs are "records dealing with the detection and investigation of crime" should be guided by the purposes underlying the statutory exemption and the factors discussed in *Walton*. This includes whether the records at issue contain the type of information that might "endanger the state's position in criminal prosecutions" or "reveal the names of informants," or other information that might "threaten to intimidate potential witnesses," such as " 'speculations of a suspect's guilt, officers' views as to the credibility of witnesses, statements by informants, . . . or blood and other laboratory tests.' " *Walton*, 154 Vt. at 23, 573 A.2d at 300-01 (quoting *Houston Chron. Publ'g Co.*, 531 S.W.2d at 187)). The parties may also identify other compelling policy interests. Because we find reversal appropriate on § 317(c)(5) grounds, we do not reach the second PRA exemption on which Bain relies.[4]

---

[4] In reaching our conclusion, we reject defendants' argument that amicus curiae American Civil Liberties Union Foundation of Vermont has improperly attempted to expand the scope of this appeal. The issue before us is the proper interpretation

 ¶ 23. Finally, we vacate the court's decision to grant injunctive relief to Clark. As we have recently explained, in deciding whether a prefiling injunction is warranted, "[t]he ultimate question is whether a litigant who has a history of vexatious litigation is likely to continue to abuse the judicial process and harass other parties." *Zorn v. Smith*, 2011 VT 10, ¶ 18, 189 Vt. 219, 19 A.3d 112 (quotation omitted). While Bain has touched on similar issues in other cases, this is the first state case to directly address the merits of his claim that he is entitled to the information he seeks under the PRA. A prefiling injunction is thus not warranted at this juncture.

*We affirm the court's dismissal of Bain's complaint against Tracy Shriver, and we reverse and remand its dismissal of Bain's complaint against Clark. We vacate the court's prefiling injunction against Bain.*

---

of 1 V.S.A. § 317(c)(5), a question we review de novo. *Wright v. Bradley*, 2006 VT 100, ¶ 6, 180 Vt. 383, 910 A.2d 893. In conducting our analysis, we consider not only the statutory language, but also the legislative policies that the statute was designed to implement. See, e.g., *Dep't of Corr. v. Human Rights Comm'n*, 2006 VT 134, ¶ 7, 181 Vt. 225, 917 A.2d 451. In its brief, the ACLU advances various policy arguments that support Bain's contention that § 317(c)(5) does not extend to the records at issue here. We would have considered the policies underlying § 317(c)(5) regardless of the ACLU's brief. In any event, an amicus curiae "may assist the court in its consideration of issues properly presented by the actual parties," *State v. Bell*, 136 Vt. 144, 147, 385 A.2d 1094, 1096 (1978), and the various policy arguments proffered by amicus serve this end here.