Rutland Herald v. City of Rutland, No. 221-3-10 Rdcv (Cohen, J., Sept. 27, 2012)

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

STATE OF VERMONT

SUPERIOR COURT                                         CIVIL DIVISION
Rutland Unit                                           Docket No. 221-3-10 Rdcv

Rutland Herald
        Plaintiff

v.

City of Rutland
        Defendant


Decision on Remand

At issue is whether the City of Rutland must disclose records of a 2004 investigation into allegations that an employee of the city police department viewed pornography, including possible child pornography, on a work computer. The case has been remanded for a determination as to whether the records are exempt from disclosure under 1 V.S.A. § 317(c)(5) as records "dealing with the detection and investigation of crime."[1] *Rutland Herald v. City of Rutland*, 2012 VT 26, ¶ 32 ("*Rutland Herald II*").

The following facts were established at the evidentiary hearing on remand. In 2004, a routine troubleshooting of a work computer used by "RPD Employee #1" revealed the presence of pornographic images on the hard drive. Captain Scott Tucker was assigned to investigate. His initial assignment was to determine whether or not the employee had viewed pornography on a work computer—a violation of the city's computer-usage policy, but not a crime.

After reviewing the contents of the computer, however, Captain Tucker became suspicious that it might contain images of possible child pornography. He secured the computer and sent it to a specialist at the Vermont State Police for a forensic examination. The specialist determined that the computer contained images of possible child pornography but that the evidence was not sufficient to support a criminal prosecution because of the location of the images on the hard drive. Cf. *People v. Kent*, 970 N.E.2d 833, 840–41 (N.Y. 2012) (discussing evidentiary issues involved with proving that images found in a computer's cache were knowingly possessed by the user).

After receiving this assessment, Captain Tucker resumed his investigation with a primary focus on determining whether the employee had violated the workplace rules regarding computer usage. In his interview questioning, however, he continued to explore the possibility of a knowing possession of child pornography because, as he put it at the evidentiary hearing, he "never gave up on the possibility that this was criminal."

---

[1] The case was remanded to the court with respect to three separate internal-affairs investigations, but the parties have reached agreement as to the appropriate handling of the documents from both 2010 investigations. All that remains for decision is the question of whether the records from the 2004 investigation should be disclosed.

In determining whether the records of these investigations "deal[] with the detection and investigation of crime," the court begins with a recognition of the constitutionally-protected interest in public access concerning the activities of law-enforcement officers. *Galloway v. Town of Hartford*, 2012 VT 61, ¶ 9; *Bain v. Windham County Sheriff*, 2012 VT 14, ¶ 17; *Caledonian Record Publishing Co. v. Walton*, 154 Vt. 15, 21 (1990). It "do[es] not overstate the case [to say] that open access to governmental records is a fundamental precept of our society." *Bain*, 2012 VT 14, ¶ 17. Our tradition of open government is founded on the premise that our public officials are "trustees and servants of the people and it is in the public interest to enable any person to review and criticize their decisions even though such examination may cause inconvenience or embarrassment." *Price v. Town of Fairlee*, 2011 VT 48, ¶ 13, 190 Vt. 66 (quoting 1 V.S.A. § 315); Peter R. Teachout, *'Trustees and Servants': Government Accountability in Early Vermont*, 31 Vt. L. Rev. 857 (2007). The public interest in disclosure is particularly acute with respect to law-enforcement activities. *Walton*, 154 Vt. at 21.

The other guiding principle is recognition of the important interest of the state in protecting the public from criminal activity and in preserving the confidentiality of the state's methods of detecting and investigating crime. *Rutland Herald v. Vermont State Police*, 2012 VT 24, ¶ 9 ("*Rutland Herald I*"). Our legislature has balanced these two important interests by concluding that, as a general matter, records should remain exempt from public disclosure when they are shown by the state to be records "dealing with the detection and investigation of crime." 1 V.S.A. § 317(c)(5).

Each public-records case presents a fundamental tension between the public interests in disclosure and the state's interests in withholding the information from the public, and a degree of navigational fine-tuning is needed in every case to preserve the definitional balance intended by the legislature with respect to the scope of the exemption. In every case, therefore, the court must additionally be guided by the principle that the scope of any exemption from disclosure must be carefully construed against the records custodian, with doubts drawn in favor of the right of public access. *Galloway*, 2012 VT 61, ¶ 9.

With respect to the § 317(c)(5) exemption, many of the applicable cases have dealt with the situation where a law-enforcement agency investigates a private citizen for suspected criminal activities that are external to the agency's own operations. *Rutland Herald II*, 2012 VT 26, ¶ 27. In these cases, the governmental interests are at their apex because the agency is fulfilling its primary police function of protecting the public, and the public interests in disclosure are mitigated by the privacy rights of the uncharged individual who was the subject of the investigation. As such, records from these types of external investigations are usually held to be exempt from disclosure so long as the agency is able to identify a particular individual or incident as the object of the investigation and a plausible, objective basis for connecting that individual or incident to a possible violation of the criminal laws. *King v. Dep't of Justice*, 830 F.2d 210, 230 (D.C. Cir. 1987); *Pratt v. Webster*, 673 F.2d 408, 419–20 (D.C. Cir. 1982).

A different situation occurs when a law-enforcement agency investigates the conduct of one of its own employees. Under these circumstances, the public interest in disclosure is at its peak because the public has a heightened interest in the disclosure of records that shed light upon an agency's performance of its official duties—here, the workings of the city police department in investigating the alleged misconduct of its own employees. *Providence Journal Co. v. Dep't of the Army*, 981 F.2d 552, 568 (1st Cir. 1992). At the same time, the governmental interests in the protection of the citizenry are at their lowest ebb, at least to the extent that the government is monitoring its own employees rather than engaging in its primary law-enforcement function. *Rural*

2

*Housing Alliance v. Dep't of Agriculture*, 498 F.2d 73, 80–82 (D.C. Cir. 1974). As such, records from internal investigations are usually ordered to be disclosed unless the government is able to prove that the internal investigation was conducted for the purpose of determining whether the employee violated the criminal laws, as opposed to mere "workplace infractions that do not necessarily constitute criminal conduct." *Rutland Herald II*, 2012 VT 26, ¶ 23. Here, because of the heightened public interest involved, the court is generally less deferential to the agency's explanation as to the nature of its investigation, and a more searching, objective inquiry is undertaken. *Stern*, 737 F.2d at 88–89.

At an even finer resolution, there is an additional distinction between internal investigations that seem to contain "mixed" components. If the internal investigation was conducted for both criminal and disciplinary purposes, then the exemption applies so long as the agency is able to demonstrate that the internal investigation was "tied in" with a criminal investigation into the question of whether a particular identified official committed a specific criminal act. *Rutland Herald II*, 2012 VT 26, ¶¶ 23–24; *Jefferson v. Dep't of Justice*, 284 F.3d 172, 177 (D.C. Cir. 2002). If the internal investigation was conducted primarily for disciplinary purpose, however, then the exemption does not apply even though the investigation might reveal evidence that later could give rise to a law-enforcement investigation. *Kimberlin*, 139 F.3d at 947.

In addition, in viewing the case through the lens of these particular microscopes, the court must be careful not to lose track of the gravitational pull of the various interests at stake. It would not further the objectives of transparency and open government for the court to determine that records should be exempted from disclosure if such a characterization would not serve the purposes of the exemption for documents dealing with the detection and investigation of crime. Nor would it further the important interest in public protection for the court to determine that an investigation was primarily done for the purposes of discipline, and thus the records should be made public, if doing so would compromise the effectiveness of the law-enforcement community's methods of detecting and investigating crime.

In this case, therefore, the court has carefully considered both the nature of the investigations and the significance of the resulting documents in relation to the overarching interests at stake. After such consideration, the court concludes that the city has failed to prove that its internal investigation was done for the purpose of determining whether its employee committed a violation of the criminal laws. The available, objective evidence instead persuaded the court that the captain was assigned to determine whether or not the employee committed a workplace infraction, thus placing the records of this investigation squarely within the § 317(c)(7) exemption rather than the § 317(c)(5) exemption. *Rutland Herald II*, 2012 VT 26, ¶ 24.

In reaching this conclusion, the court considered very carefully the captain's testimony that he undertook the investigation with an open mind as to the possibility of criminal conduct, and that he never gave up on the possibility of proving criminal conduct. But as the captain also said, it is his job to this *in every case*. A preservation of the balance intended by the legislature with respect to the scope of the § 317(c)(5) exemption therefore requires the court to focus on the available objective evidence, which showed an investigation that was primarily undertaken for the purposes of employee discipline. *Stern*, 737 F.2d at 89.

The public has an intense interest in knowing how the city police department investigates its own employees for workplace-related misconduct. This is especially true with respect to the public's interest in knowing the processes by which the department undertakes and completes its internal

3

investigations. It would serve the public well to know that their police department completed an honest investigation for the good of the department and for the integrity of the men and women who perform their jobs with professionalism.

Moreover, the release of these records would not compromise any governmental interest involving the detection and investigation of crime. See *Galloway*, 2012 VT 61, ¶ 9 (scope of exemption must be narrowly construed so as to further the purposes of open government). As such, the court concludes that the government has not proven the applicability of the § 317(c)(5) exemption. The release of these records is better handled under the disciplinary-records exemption, 1 V.S.A. § 317(c)(7), subject to the balancing and redactions already undertaken by this court in its orders of September 2010 and the clarification set forth in *Rutland Herald II*, 2012 VT 26, ¶ 42.

However, the court reaches a different conclusion with respect to the forensic examination conducted by the VSP. Here, the evidence showed that after Captain Tucker made his initial investigation of the computer, he decided to initiate a criminal investigation of the employee's conduct by sending the computer to VSP for a forensic examination. A specialist thereafter conducted the forensic examination and prepared a report with findings and conclusions; the release of the report and the evidence uncovered during the examination would surely compromise the interests of the state in preserving the confidentiality of its methods of detecting and investigating crime. As such, the court is persuaded that the VSP investigation was initiated for the purpose of determining whether the employee committed the crime of knowing possession of child pornography, and the evidence gathered by the specialist, along with his report, is exempt from disclosure under § 317(c)(5). As to these records, there is no further balancing of the respective interests at stake; the records are categorically and permanently exempt from disclosure. *Rutland Herald I*, 2012 VT 24, ¶ 12.

The final conclusion is that the records related to the VSP forensic examination into the question of whether the employee committed the crime of knowing possession of child pornography are exempt from disclosure under § 317(c)(5). All other records relating to the internal investigation of "RPD Employee #1," complied either before or after the VSP investigation, are not exempt from disclosure under § 317(c)(5), and must be disclosed subject to the redactions already proposed by the court in September 2010, and subject to additional redactions, if necessary, of all personally-identifying information about "RPD Employee #1," as well as redactions of the dates of suspension.

The City of Rutland shall release the appropriate records within ten days unless any party files for appeal, in which case the disclosure of the documents shall be stayed pending appeal.

**SO ORDERED**

Dated at Rutland, Vermont this _____ day of September, 2012.

_____
William D. Cohen
Superior Court Judge

4