Filed 10/30/24

VERMONT SUPERIOR COURT                                        CIVIL DIVISION

Washington Unit                                             Case No. 24-CV-02289

65 State Street

Montpelier VT 05602

802-828-2091

www.vermontjudiciary.org



---

| Vermont Journalism Trust v. Vermont Department of Public Safety |
|---|

<u>Opinion and Order on the Department of Public Safety's Motion to Dismiss</u>

Plaintiff the Vermont Journalism Trust (VTDigger) submitted a public records request to Defendant the Department of Public Safety (DPS) seeking all audio and video footage of police interactions with Addison County State's Attorney Eva Vekos on January 25, 2024, when she is alleged to have arrived at a crime scene inebriated and police arrested her for driving under the influence. *See* 1 V.S.A. §§ 315–320 (Public Records Act or PRA). DPS denied access to all such records initially and on administrative appeal. VTDigger then filed this suit seeking to enforce the PRA.

DPS has now filed a Vt. R. Civ. P. 12(b)(6) motion to dismiss. DPS claims that the records sought are entirely exempt from the PRA under exemptions applicable to records the release of which: (a) would cause the custodian to violate a professional ethics standard; (b) could be expected to interfere with enforcement proceedings; and (c) would deprive a person of a fair trial. 1 V.S.A. § 317(c)(3) (ethics), (c)(5)(A)(i) (interference with enforcement), (c)(5)(A)(ii) (fair trial). DPS asserts that these exemptions apply "categorically," and the Court can rule on their applicability as a matter of law under Rule 12(b)(6).

## I.  Procedural Standard

The Vermont Supreme Court disfavors Rule 12(b)(6) motions to dismiss. "Dismissal under Rule 12(b)(6) is proper only when it is beyond doubt that there exist no facts or circumstances consistent with the complaint that would entitle Plaintiff to relief." *Bock v. Gold*, 2008 VT 81, ¶ 4, 184 Vt. 575, 576 (mem.) (*citing Union Mut. Fire Ins. Co. v. Joerg,* 2003 VT 27, ¶ 4, 175 Vt. 196, 198)). In considering a motion to dismiss, the Court "assume[s] that all factual allegations pleaded in the complaint are true, accept[s] as true all reasonable inferences that may be derived from plaintiff's pleadings, and assume[s] that all contravening assertions in defendant's pleadings are false." *Mahoney v. Tara, LLC*, 2011 VT 3, ¶ 7, 189 Vt. 557, 558–59 (mem.) (internal quotation, brackets, and ellipses omitted).

A motion to dismiss is often ill suited to PRA cases, at least absent an agreed-upon record and clear law. In this instance, the only factual record in this case consists of the allegations of the complaint and its attachments, which document the communications between VTDigger and DPS. If in denying VTDigger's records request DPS produced any sort of index identifying the withheld records, *see* 1 V.S.A. § 318(b)(2)(A), it is not in the record. Accordingly, while the general subject matter of the withheld records is clear enough, what they may show more specifically is unknown.

## II.  Analysis

The parties are at odds over the proper breadth of the cited exemptions and how they may apply in this case. Before determining whether VTDigger has stated a claim, the Court first addresses two preliminary issues: whether the exemptions apply in a

categorical fashion as asserted by DPS, and whether DPS's alleged failure to raise the fair trial exemption administratively waives its ability to rely on that exemption here.

### A.    Whether the Exemptions Apply Categorically

DPS asserts (without explanation) that the cited exemptions apply "categorically." In other words, DPS maintains that if exemptions apply to even part of a record, they exempt that record in totality. As a result, making redactions and releasing what remains is unnecessary. The general statutory directive under the PRA, however, is that a "public agency shall not withhold any record in its entirety on the basis that it contains some exempt content if the record is otherwise subject to disclosure; instead, the public agency shall redact the information it considers to be exempt and produce the record accompanied by an explanation of the basis for denial of the redacted information." 1 V.S.A. § 318(e). Without more specific authority that an individual exemption nevertheless applies categorically as contemplated by DPS, redaction and release is the guiding principle. The Court is aware of no such more specific authority regarding the violation-of-ethics exemption at 1 V.S.A. § 317(c)(3), DPS has cited none, and there is nothing on the face of the exemption that suggests that it applies categorically.

The exemptions related to records "dealing with the detection and investigation of crime" at 1 V.S.A. § 317(c)(5) are a slightly different matter. The Vermont Supreme Court has interpreted Exemption (c)(5) to be categorical and not subject to redactions. *See Rutland Herald v. Vermont State Police*, 2012 VT 24, ¶ 24, 191 Vt. 357, 370 ("The statute is broadly worded and it provides a categorical exemption for such records irrespective of their specific content."); *Id.*, 2012 VT 24, ¶ 25, 191 Vt. at 371 ("Because § 317(c)(5) provides a record-based, rather than content-based, limitation, we also reject

3

the Herald's argument that the court could release investigatory records but require redaction of information."); *Id.*, 2012 VT 24, ¶ 30, 191 Vt. at 372 ("As set forth above, we do not engage in a content-based analysis of these records once they have been determined to be 'records dealing with the detection and investigation of crime.' Such records are wholly exempt from public access.").

At the time of the *Rutland Herald* decision, 1 V.S.A. § 317(c)(5) exempted from public access the following:

> (5) records dealing with the detection and investigation of crime, including those maintained on any individual or compiled in the course of a criminal or disciplinary investigation by any police or professional licensing agency; provided, however, that records relating to management and direction of a law enforcement agency; records reflecting the initial arrest of a person, including any ticket, citation, or complaint issued for a traffic violation, as that term is defined in 23 V.S.A. § 2302; and records reflecting the charge of a person shall be public.

If the record dealt with such material, it was exempt regardless that it might also contain information that was not exempt (but for the listed exceptions).

In 2013, though, Exemption (c)(5) was substantially amended. It now reads as follows:

> (5)(A) Records dealing with the detection and investigation of crime, *but only to the extent that the production of such records*:
>     (i) could reasonably be expected to interfere with enforcement proceedings;
>     (ii) would deprive a person of a right to a fair trial or an impartial adjudication;
>     (iii) could reasonably be expected to constitute an unwarranted invasion of personal privacy;
>     (iv) could reasonably be expected to disclose the identity of a confidential source, including a state, local, or foreign agency or authority or any private institution that furnished information on a confidential basis, and, in the case of a record or information compiled by criminal law enforcement authority in the course of a criminal investigation or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source;

4

(v) would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecution if such disclosure could reasonably be expected to risk circumvention of the law;
(vi) could reasonably be expected to endanger the life or physical safety of any individual.

(B) Notwithstanding subdivision (A) of this subdivision (5), records relating to management and direction of a law enforcement agency; records reflecting the initial arrest of a person, including any ticket, citation, or complaint issued for a traffic violation, as that term is defined in 23 V.S.A. § 2302; and records reflecting the charge of a person shall be public.

(C) It is the intent of the General Assembly that in construing subdivision (A) of this subdivision (5), the courts of this State will be guided by the construction of similar terms contained in 5 U.S.C. § 552(b)(7) (Freedom of Information Act) by the courts of the United States.

(D) It is the intent of the General Assembly that, consistent with the manner in which courts have interpreted subdivision (A) of this subdivision (5), a public agency shall not reveal information that could be used to facilitate the commission of a crime or the identity of a private individual who is a witness to or victim of a crime, unless withholding the identity or information would conceal government wrongdoing. A record shall not be withheld in its entirety because it contains identities or information that have been redacted pursuant to this subdivision.

1 V.S.A. § 317(c)(5) (emphasis added).

By its terms, then, the exemption now applies "only to the extent that the production of such records" otherwise would contain the material more specifically described in 1 V.S.A. § 317(c)(5)(A)(i)–(vi). "To the extent" requires some kind of content-based examination of the record. Moreover, to whatever extent Subsection (c)(5)(A) counsels in favor of nondisclosure, if Subsection (c)(5)(B) applies, disclosure prevails.

Such a construction of the plain language is also supported the "Act Summary" that accompanied the amendments. Act summaries are not determinative of legislative intent, and they cannot be relied upon to contradict the clear language of a statute, but they "may be helpful in deducing legislative intent where the plain language of the

5

statute is unclear." *Doncaster v. Hane*, 2020 VT 22, ¶ 22, 212 Vt. 37, 45. The 2013

amendment at issue here, 2013, No. 70, is not unclear, but the Act Summary is fully

consistent with the Court's analysis of language set out above. It provides:

> This act adopts a standard nearly identical to the federal Freedom of Information Act (FOIA) standard for purposes of determining when records dealing with the detection and investigation of crime are exempt from disclosure under the Vermont Public Records Act (PRA). Under prior law, records dealing with the detection and investigation of crime were categorically and permanently exempt from disclosure under the PRA. The act replaces that categorical exemption with a FOIA-derived balancing test that only exempts criminal investigation records from disclosure if production of the records would interfere with enforcement proceedings, deprive a person of a right to a fair trial, constitute an unwarranted invasion of personal privacy, disclose the identity of a confidential source, disclose techniques and procedures for law enforcement investigations or prosecutions, or endanger the life or physical safety of any individual.

Act Summary, 2013, No. 70 (emphasis added), available at

https://legislature.vermont.gov/Documents/2014/Docs/ACTS/ACT070/Act070%20Act%20S

ummary.htm.

Given the amended statutory language, the Court concludes that redaction and

release now is required, if possible—the exemption is no longer categorical *per se*. The

2013 amendment abrogated the *Rutland Herald* holding to the contrary.[1] While entire

records still may be subject to withholding, DPS must demonstrate that as the particular

record.

---

[1] There is a "generic, categorical" approach that an agency may take under FOIA Exemption 7(A), the analog to PRA Exemption (c)(5)(A)(1), but even that approach requires the release of reasonably segregable, non-exempt material. *See* Department of Justice Guide to the Freedom of Information Act, Exemption 7(A) at 22 ("[C]ourts have held that the burden is on agencies to 'identify either specific documents or functional categories of information that are exempt from disclosure, and disclos[e] any reasonably segregable, non-exempt' portions.").

None of the cited exemptions applies in a categorical fashion. Each may properly be the basis for a redaction, but any non-exempt material must be produced.

B.      Preservation in the Administrative Proceeding

VTDigger argues that DPS is limited in this case to whatever exemptions it may have invoked in the administrative proceeding and any others not so raised have not been preserved and should be deemed waived. Specifically, VTDigger asserts DPS should not be able to invoke the exemption concerning Ms. Vekos' right to a fair trial under 1 V.S.A. § 317 (c)(5)(A)(ii). This argument requires no protracted analysis.

The only Vermont authority VTDigger cites for this argument is *Pratt v. Pallito*, 2017 VT 22, 204 Vt. 313. *Pratt* is not a PRA case. That ruling simply reiterates the general preservation rule, which ensures that agencies have a fair chance to rule on issues at the administrative level before confronting them on appeal. That principle has no applicability here.

Review in Superior Court of the denial of a records request is *de novo*, and the Court is specifically charged by statute with determining whether withheld materials are subject to "any" exemptions. *See* 1 V.S.A. § 319(a) (emphasis added) ("In such a case, the court shall determine the matter *de novo*, and may examine the contents of such agency records *in camera* to determine whether such records or any part thereof shall be withheld under any of the exemptions set forth in section 317 of this title, and the burden of proof shall be on the public agency to sustain its action."). Under the statute, the Court is making its own assessment of which exemptions may apply even if the allocation of burden to the agency means that the Court errs on the side of production.

7

Moreover, penalizing an agency in the manner urged by VTDigger would be unfair considering the time constraints imposed on agencies under the PRA. Agencies must produce requested record, explain exemptions, and certify if none exists "promptly." 1 V.S.A. § 318(b), (b)(2), (b). "Promptly" means "immediately" and "not more than three business days." 1 V.S.A. § 318(a)(1). Appeals to the head of the agency must be resolved within 5 business days. 1 V.S.A. § 318(c)(1). In all but the most straightforward situations, such a timeline values expediency at the expense of thoughtful reflection. It is little wonder that agencies may sometimes adjust the exemptions invoked after a lawsuit has been filed and they have had time to engage in a deeper analysis. The salutary characteristics of the preservation rule simply make no sense in this context.

FOIA is to the same effect. "Because the FOIA directs district courts to review agency actions *de novo*, an agency is not barred from invoking a particular exemption in litigation merely because that exemption was not raised at the administrative level." Department of Justice Guide to the Freedom of Information Act, Litigation Considerations Part 2 at 62 (and see the cases annotated at 62 n.176).

Against this, VTDigger cites a single out-of-state case to the contrary. It is a New York state case based on that state's records act. VTDigger offers no analysis as to why the statutory regimes are analogous, much less any analysis to the effect that the Court should find the New York decision persuasive in light of the above authorities.

The preservation rule relied upon by VTDigger does not apply in PRA cases. In any event, even if it did, it would not benefit VTDigger in this case. At the administrative level, DPS several times said that part of the reason for denial was

8

concern about a fair and impartial trial. Those assertions provided VTDigger with sufficient notice of DPS's position on the matter.

C.      The Standards of Ethics Exemption, 1 V.S.A. § 317(c)(3)

Exhibits to the complaint contain DPS representations that attorneys from the Attorney General's Office (AGO) who are prosecuting the criminal case against Ms. Vekos advised DPS not to produce any of the requested records because doing so would cause them, the AGO attorneys, to violate their ethical obligations under Vt. R. Prof. C. 3.6, 3.8. DPS in turn characterizes those ethical obligations as creating a basis for invoking the exemption at 1 V.S.A. § 317(c)(3). Rule 3.6, subject to exceptions, provides: "A lawyer who is participating or has participated in the investigation or litigation of a matter shall not make an extrajudicial statement that the lawyer knows or reasonably should know will be disseminated by means of public communication and will have a substantial likelihood of materially prejudicing an adjudicative proceeding in the matter." Vt. R. Prof. C. 3.6(a). Rule 3.8 further provides that:

> The prosecutor in a criminal case shall: … except for statements that are necessary to inform the public of the nature and extent of the prosecutor's action and that serve a legitimate law enforcement purpose, refrain from making extrajudicial comments that have a substantial likelihood of heightening public condemnation of the accused and exercise reasonable care to prevent investigators, law enforcement personnel, employees or other persons assisting or associated with the prosecutor in a criminal case who are in the employment or under the control of the prosecutor from making an extrajudicial statement that the prosecutor would be prohibited from making under Rule 3.6 or this rule.

Vt. R. Prof. C. 3.8(f).

By contrast, Exemption 3 extends only to "[r]ecords that, if made public pursuant to this subchapter, would cause the custodian to violate duly adopted standards of ethics or conduct for any profession regulated by the State." The AGO is not the custodian of

9

the disputed records; DPS has that responsibility. The AGO and DPS are different agencies. There is no palpable claim in this case that any disclosure of records required by the PRA would cause DPS personnel to violate any applicable professional ethics standard.

DPS also does not explain how the court-ordered release of a public record under the PRA could possibly be an "extra-judicial statement" made by a prosecutor or associate of a prosecutor.

Moreover, there are several exceptions to Rule 3.6(a) set forth in Rule 3.6(b). Among those: "Notwithstanding paragraph (a), a lawyer may state: . . . (2) information contained in a public record." Vt. R. Prof. C. 3.6(b)(2). The Official Comments to Rule 3.8 characterize Rule 3.8(f) as a "supplement" to Rule 3.6 and explain that it is "not intended to restrict the statements which a prosecutor may make which comply with Rule 3.6(b)." Vt. R. Prof. C. 3.8, Comment [5]. Even if the AGO were the custodian in this case, it is not clear, at this juncture, that these rules would support the application of the exemption at 1 V.S.A. § 317(c)(3).

### D. The Remaining Exemptions

Otherwise, DPS argues that all the materials deal with the detection and investigation of crime and either "could reasonably be expected to interfere with enforcement proceedings" or "would deprive a person of a right to a fair trial or impartial adjudication." 1 V.S.A. § 317(c)(5)(A)(i)–(ii). The main problem with this argument in the procedural posture of this case is that the Court has no way of knowing what is in the withheld records and DPS has made no content-specific arguments that could support withholding or release after redactions.

10

Moreover, DPS's arguments necessarily are overbroad. Even if all the withheld records are properly exempt from production under § 317(c)(5)(A), Subsection (c)(5)(B) nevertheless provides: "Notwithstanding subdivision (A) of this subdivision (5), . . . records reflecting the initial arrest of a person . . . shall be public." It is clear that Ms. Vekos was arrested on the relevant date. Assuming that the arrest appears in the requested footage, as DPS appears to concede, at least some of that footage likely would be accessible as reflecting her initial arrest.

Beyond that, VTDigger's argument that all footage on the date in question is accessible as reflecting the initial arrest also appears to be substantially overbroad. Only three Vermont authorities shed light on the breadth of the "initial arrest" vis-à-vis detection and investigation for PRA purposes. First, in *Caledonian Record Pub. Co. v. Walton*, 154 Vt. 15 (1990), the public records requestor sought copies of criminal citations. The Court concluded that a citation (similar to an arrest) is what happens as the "result" of the detection and investigation of crime; it is not part of the detection and investigation itself. "We concur with the holdings of the Ohio and Texas courts that arrest records are not records dealing with the investigation and detection of crime, but rather are the product of such an investigation." *Walton*, 154 Vt. at 23. The *Walton* Court also said: "Both an arrest and the issuance of a citation involve a finding by a law enforcement officer that there is probable cause to believe a person has committed a crime and both involve the commencement of a criminal proceeding based on that finding." *Id.* at 26. The citations were accessible on that basis.

Second, in *Bain v. Windham County Sheriff Keith Clark*, 2012 VT 14, 191 Vt. 190, the request was for certain police logs. The Supreme Court could not determine what

11

might be in the logs, so it instructed the trial court on remand to determine whether the logs related to the detection and investigation of crime or something else. Its guidance for the remand was as follows:

> On remand, the court's evaluation of whether these logs are "records dealing with the detection and investigation of crime" should be guided by the purposes underlying the statutory exemption and the factors discussed in *Walton*. This includes whether the records at issue contain the type of information that might "endanger the state's position in criminal prosecutions" or "reveal the names of informants," or other information that might "threaten to intimidate potential witnesses," such as "'speculations of a suspect's guilt, officers' views as to the credibility of witnesses, statements by informants, . . . or blood and other laboratory tests.'" The parties may also identify other compelling policy interests.

*Bain*, 2012 VT 14, ¶ 22, 191 Vt. 190, 201 (citation omitted).

The last case of any significance is *Galloway v. Town of Hartford*, 2012 VT 61, 192 Vt. 171. There, the Hartford police responded to a house after being told a burglar was on the second floor. They entered the home, pepper-sprayed a man, handcuffed him, and promptly learned that he was the homeowner. VTDigger sought all records related to the incident. The trial court only released records from the period *after* the police decision not to charge the innocent homeowner. On appeal, the Supreme Court (plurality) made a criminal law determination that the events amounted to a *de facto* arrest by the police and appears then to have concluded that all records created "as a result" of the incident should be released as reflecting an initial arrest. The mandate is as follows: "The superior court judgment is reversed. Under the facts of this case, all records considered by the trial court that were identified by the police as being generated as a result of the incident should be considered records reflecting the homeowner's initial arrest and are to be disclosed."

12

All these cases predate the 2013 amendment to 1 V.S.A. § 317(c)(5), and none implies that the Legislature would have expansively intended that the exceptions at amended Subsection 317(c)(5)(B) might render the Exemptions at Subsection 317(c)(5)(A) a near nullity. Beyond that, the Court declines to engage in any academic line-drawing exercise under the standards of Rule 12(b)(6) without the benefit of a *Vaughn* index or otherwise knowing what is in the withheld records and specifically how DPS thinks the exemptions apply to whatever is in those records. *See Vaughn v. Rosen*, 484 F.2d 820, 827–28 (D.C. Cir. 1973).

Further, the Court notes that Section 317(c)(5)(C) counsels: "It is the intent of the General Assembly that in construing subdivision (A) of this subdivision (5), the courts of this State will be guided by the construction of similar terms contained in 5 U.S.C. § 552(b)(7) (Freedom of Information Act [FOIA]) by the courts of the United States."[2] PRA Exemptions (c)(5)(A)(i), (ii) correspond, respectively, with FOIA Exemptions 7(A), (B). The Department of Justice Guide to the Freedom of Information Act (the Guide), available at https://www.justice.gov/oip/doj-guide-freedom-information-act-0, contains a detailed exposition on federal FOIA case law.

As generally relevant here, the Guide explains the following with regard to the interference-with-enforcement exemption:

> Courts have recognized repeatedly that the change in the language for this exemption [from "would interfere" to "could reasonably be expected to"] effectively broadened its protection.
>
> Exemption 7(A) requires a two-step analysis. First, there must be a "pending or reasonably anticipated" law enforcement proceeding. Second,

---

[2] This provision did not exist before the 2013 amendment and thus is not reflected in the pre-amendment cases.

release of the information must be reasonably expected to cause some articulable harm to that proceeding.

The Guide, Exemption 7(A) at 1–2, 12–14 (footnotes omitted).

Regarding FOIA Exemption 7(B), the Guide suggests a similar two-step analysis to determine if the exemption applies: "(1) that a trial or adjudication is pending or truly imminent; and (2) that it is more probable than not that disclosure of the material sought would seriously interfere with the fairness of those proceedings." The Guide, Exemption 7(B) at 1–3 (footnotes omitted).

The Court does not necessarily endorse those approaches to the Vermont analog to FOIA, but neither side has fully explored them. And the Court cannot see how they can be applied to a cold record under Rule 12(b).

### Conclusion

For the foregoing reasons, DPS's motion to dismiss is denied. This case will be set for an early status conference to determine next steps to resolve the dispute. The Court encourages counsel to confer regarding that process as well.

Electronically signed on Friday, October 25, 2024, per V.R.E.F. 9(d).

Timothy B. Tomasi
Superior Court Judge

14